School District of Pittsburgh, Petitioner v. Commonwealth of Pennsylvania, Department of Education, Respondent. Joseph Scott et al., Intervenors.

Argued November 2, 1977, before President Judge BOWMAN and Judges CRUMLISH, JR., WILKINSON, JR., ROGERS and BLATT.

*Justin M. Johnson*, Solicitor, with him *Persifor S. Oliver, Jr., Assistant* Solicitor, for petitioner.

*Patricia A. Donovan,* Deputy Attorney General, for respondent.

*William B. Ball,* with him *Joseph G. Skelly, Philip J. Murren,* and *Ball & Skelly,* for intervening respondents.

OPINION BY JUDGE ROGERS, February 10, 1978:

This case involving, *inter alia,* the Establishment Clause of the First Amendment to the Constitution of the United States,[1] had its origin in an amendment made to Section 1361 of the Public School Code of 1949, Act of March 10, 1949, P.L. 30, *as amended,* 24 P.S. §13-1361, by the Act of December 29, 1972, P.L. 1726.

Section 1361 in its original 1949 form read:

The board of school directors in any school district may, out of the funds of the district, provide for the free transportation of any resident pupil to and from the public schools and to and from any points in the Commonwealth in order to provide tours for any purpose connected with the educational pursuits of the pupils. They shall provide such transportation whenever so required by any of the provisions of this act or of any other act of Assembly.

As the result of economic and sociological forces which it is not necessary or within this writer's special competence to describe, the General Assembly was moved to amend Section 1361 by Act 91 of June 15, 1965, P.L. 133, pertinently by deleting the second

---

[1] Congress shall make no law respecting an establishment of religion. . . . This provision was made applicable to the states by the Fourteenth Amendment.

*Murdock v. Commonwealth of Pennsylvania,* 319 U.S. 105 (1943).

sentence thereof and adding in its place the following:

When provision is made by a board of school directors for the transportation of resident pupils to and from the public schools the board of school directors shall also make provision for the free transportation of pupils who regularly attend nonpublic elementary and high schools not operated for profit. Such transportation provided for pupils attending nonpublic elementary and high schools not operated for profit shall be over established public school bus routes. Such pupils shall be transported to and from the point or points on such routes nearest or most convenient to the school which such pupils attend. The board of school directors shall provide such transportation whenever so required by any of the provisions of this act or of any other Act of Assembly.

This amendment was challenged on State and Federal constitutional grounds and upheld in *Rhoades v. Abington Township School District*, 424 Pa. 202, 226 A.2d 53 (1967).

The present version of Section 1361, and the one with which we are here concerned, was the result of the extensive amendment first referred to herein, accomplished by Act 372 of December 29, 1972, P.L. 1726. The statute now pertinently reads as follows:

The board of school directors in any school district may . . . provide for the free transportation of any resident pupil to and from the kindergarten, elementary school, or secondary school in which he is lawfully enrolled, provided that such school is not operated for profit and is located within the district boundaries or outside the district boundaries at a

distance not exceeding ten miles by the nearest public highway, except that such ten-mile limit shall not apply to area vocational technical schools which regularly serve eligible district pupils or to special schools and classes approved by the Department of Education. . . . When provision is made by a board of school directors for the transportation of public school pupils to and from such schools . . . the board of school directors shall also make identical provision for the free transportation of pupils who regularly attend nonpublic kindergarten, elementary and high schools not operated for profit to and from such schools.

. . .

As it happened, no children enrolled in the public schools conducted by the appellant School District of Pittsburgh (School District) attended schools located outside of the school district boundaries. As the School District describes this circumstance in its brief, the "School District has never had occasion to transport any of its regular students . . . beyond its boundaries. . . ."

As will be observed, Act 372 changed the provision of Act 91 that nonpublic school pupils might be transported by established public school routes to points near their schools to one requiring nonpublic pupils to be taken to their schools. In obedience to this change, the School District expanded its intradistrict bussing program for nonpublic school pupils. This resulted in an increase in number of nonpublic pupils furnished transportation from 700 to 3807, and an increase in annual cost to the School District of about $327,000. The School District refused to provide any transportation for resident nonpublic pupils attending schools outside the district, asserting that since it transported public school students only with-

in the district, it was making "identical provision" for transporting nonpublic pupils by transporting nonpublic school children only within the district boundaries.

Learning of the School District's refusal to transport nonpublic school pupils outside the district boundaries, and having in hand an Official Opinion of the Attorney General that these pupils were entitled to such transportation under Act 372, the Commonwealth's Secretary of Education, in February 1974, directed the School District to show cause why the Department of Education should not withhold State reimbursement for its transportation expense until the School District complied with the law. A Hearing Examiner heard evidence in January 1975 and filed a report in August 1976 recommending that the School District's transportation reimbursement for the school year 1973-1974 be withheld until the School District arranged to transport all of its resident pupils to their schools within the district or outside for a distance of ten miles and additionally arranged to reimburse parents of nonpublic school pupils their expenses of out-of-district transportation during 1973-1974, 1974-1975 and 1975-1976. By order dated August 25, 1976 and amended order dated August 30, 1976, the Secretary of Education (1) directed the School District to transport nonpublic school pupils beyond the district boundaries and (2) ordered that the "transportation subsidies paid to the School District . . . for the 1973-1974 school year shall be recovered and withheld" until the School District should transport all nonpublic school children to their schools and until the School District should reimburse the parents of nonpublic school pupils as the Hearing Examiner recommended. The School District filed its petition for review of the Secretary's order and applied for a stay of the Secretary's order pending

review, which we granted. We now affirm the Secretary's order directing the School District to transport eligible nonpublic school pupils to their schools outside the district's boundaries at a distance not exceeding ten miles; but set aside the Secretary's order directing that the 1973-1974 school year transportation subsidy "be recovered and . . . withheld."

At the hearings below the School District showed, in addition to the substantial increase in numbers of nonpublic pupils transported and the substantial cost of its compliance with the intra-district bussing requirements of Act 372, that it would, if required to transport nonpublic school pupils to their schools outside the district, be called upon to transport an additional 2200 nonpublic school pupils, of course at still more expense. The record also shows that the 2200 nonpublic pupils attending schools located outside the district are enrolled in nineteen schools, eighteen of which are affiliated with religious institutions and that fifteen of these eighteen are affiliated with the Roman Catholic Church. The School District provides transportation for all of its 16,825 resident public school pupils; as a result of the School District's refusal to transport nonpublic school pupils to their schools outside the district, 3,807, only, of the 6,086 nonpublic school pupils resident in the district are provided transportation.

The School District presents three questions for our consideration: (1) Can Section 1361 of the Public School Code of 1949 as amended by Act 372 of 1972 be reasonably interpreted to compel the School District to transport nonpublic school children beyond district boundaries, where the established policy of the district prohibits like benefits for public school students? (2) Does Section 1361 since its amendment by Act 372 of 1972 violate either the Establishment Clause of the United States Constitution

or Articles I and III of the Constitution of Pennsylvania? and (3) May the Secretary of Education attempt to withhold reimbursement without a clear violation of law or the duly adopted regulations of the State Board of Education? Since we think the answer to the first question is a clear yes—that the Legislature intended by Act 372 to require that both nonpublic school pupils and public school pupils be transported to their schools of attendance within the district and within ten miles outside the district boundaries, we will first address the second, more substantial constitutional question.

The leading case treating the propriety under the Establishment Clause of State provision of transportation to pupils attending nonpublic schools is, of course, *Everson v. Board of Education*, 330 U.S. 1 (1947). The New Jersey statute there in question authorized school boards to arrange for the transportation of children living remote from their school houses, including the transportation of children to and from school other than a public school, and further provided that when transportation was provided for public school children, transportation by the same established route should be supplied to nonpublic students. The school district involved in *Everson v. Board of Education, supra,* pursuant to this statute reimbursed parents, including those of pupils attending Roman Catholic schools, for money expended for public bus transportation. In upholding the statute, the Supreme Court majority wrote first that while the Establishment Clause would forbid New Jersey to contribute tax-raised funds to the support of an institution which teaches the tenets and faith of any church, it did not prohibit the State from extending the general State law benefits to all of its citizens without regard to their religious beliefs. The majority then noted that if nonpublic school pupils were

denied transportation assistance and other public services provided pupils attending public schools, parents of the former might not send their children to church schools, thus making it more difficult for these schools to operate.

But such is obviously not the purpose of the First Amendment. That Amendment requires the state to be neutral in its relations with groups of religious believers and nonbelievers; it does not require the state to be their adversary. State power is no more to be used so as to handicap religions, than it is to favor them.

This Court has said that parents may, in the discharge of their duty under state compulsory education laws, send their children to a religious rather than a public school if the school meets the secular educational requirements which the state has power to impose. See Pierce v. Society of Sisters, 268 U.S. 510. . . . It appears that these parochial schools meet New Jersey's requirements. The State contributes no money to the schools. It does not support them. *Its legislation, as applied, does no more than provide a general program to help parents get their children, regardless of their religion, safely and expeditiously to and from accredited schools.*

*Everson v. Board of Education,* 301 U.S. at 18. (Emphasis supplied.)

The amendment first made to Section 1361 of the Public School Code of 1949 by Act 91 of 1965 which we have duplicated at the outset of this opinion, is very similar to the New Jersey statute upheld in *Everson v. Board of Education, supra.* The Pennsylvania statute required school districts which trans-

ported resident public school pupils to and from public schools also to make provision for the free transportation of nonpublic school pupils, with the qualification that such transportation of nonpublic school pupils should be over established public school bus routes and to points on such routes nearest or most convenient to the schools attended. As earlier noted, the Supreme Court of Pennsylvania in *Rhoades v. Abington Township School District, supra,* upheld the amendment, concluding that *Everson v. Board of Education, supra,* was controlling.

The *Rhoades* court also found Act 91 to be proof against challenges based, *inter alia,* on Article I, section 3 and Article III, section 15 of the Pennsylvania Constitution, also invoked by the School District of Pittsburgh in this case. Article I, section 3 forbids the giving of preference by law to any religious establishment, and Article III, section 15 provides that no money raised for the support of public schools shall be appropriated to or used for the support of sectarian schools. Mr. Justice ROBERTS in a concurring opinion in which three other Justices concurred wrote in this connection:

> That there are limits to the wall of separation erected by the Constitution of Pennsylvania is a conclusion which is not only required by constitutional language itself, but demanded by the practical realities of life in a modern interdependent community where there must of necessity be many points of contact between the agencies of government and all institutions, whether church-related or not. It is the inevitability of these points of contact which has undoubtedly permitted to exist, without significant successful challenge, the provision of many governmental services

—fire, police, sewage—which in some sense benefit the conduct of religious institutions. Viewed in terms of hard realities, therefore, it is not the mere benefit to a religion which causes a service provided by government to violate our Constitution.

. . . .

The defendants in this case, as well as the opinion of the Court in the main rely upon the so-called child benefit theory to draw the line separating the constitutional from the unconstitutional. Given the presumption in favor of the constitutionality of acts of the Legislature and given this Court's duty to accept, unless palpably unreasonable, the Legislature's view as to the reasonable relation of statutes to the public health, safety and welfare, I concur in the view that Act 91 is a safety measure whose object is the protection of children from road hazards. I also agree with the Court that such a conclusion is a crucial factor in determining the constitutionality of Act 91. . . .

Thus what is ultimately persuasive to me in the instant case is not only that Act 91 is a welfare measure, but also the fact that the transportation of students is, in the phrase of Everson, 'so separate and indisputably marked off' from functions in any sense associated with religion. In other words, though I accept the conclusion that not only actual teaching of religion, but also the conduct of many other programs in parochial schools, is infused with religious significance, it seems to me clear that the process of transporting parochial students in a public bus is so devoid of any psychological, let alone, religious, sig-

546

nificance, that it does not bring the government into an association with the school which implies the approval or sanction proscribed by our Constitution.

424 Pa. at 231-34, 226 A.2d at 69-70.

Hence, under both the United States and Pennsylvania Constitutions the provision by law for the transportation of nonpublic school pupils is lawful both because it is done for the benefit of the pupil fulfilling a public requirement that he attend school, *and* because the transportation of students is an activity wholly without religious significance.

Act 372 of 1972, as we have noted, eliminated the allowance that transportation of nonpublic pupils be by established public school bus routes, and required transportation of both public and nonpublic pupils outside district boundaries to a distance of ten miles. The School District in this case has complied with the first requirement. It argues that it does not have to comply with the second because, having no occasion to, and having established its own policy that it would not, transport public school pupils outside its boundaries, its bussing of nonpublic pupils to church schools located outside the district would be adherence to a law having the primary effect of advancing religion. This concept derives from cases having nothing to do with bussing school children, stating that "various forms of assistance" may be judged constitutionally by the three-part test: "First, the statute must have a secular legislative purpose. . . . Second, it must have a 'primary effect' that neither advances nor inhibits religion. ... . Third, the statute and its administration must avoid excessive governmental entanglement with religion." *Meek v. Pittenger*, 421 U.S. 349, 358 (1975). The School District raises no question concerning the legislative purpose

of Act 372 or the possibility of excessive governmental entanglement with religion.

The School District contends that the primary effect of Act 372's requirement that pupils be transported outside the district boundaries will be the advancement of religion because almost all of the pupils it would be transporting in compliance would attend religious schools. A short answer to this argument might be that since *Everson v. Board of Education, supra,* and *Rhoades v. Abington Township School District, supra,* hold that the process of transporting parochial school children is devoid of religious significance, the same process could not by definition advance religion.

The School District nevertheless contends that since in its case pupils attending church schools will derive the principal benefits of out-of-district bussing and public school pupils will have none, the primary effect is to advance the religions to which the pupils adhere. The first difficulty with this argument is that it is not Act 372 which is the cause of this condition of affairs, but the fortuitous circumstance, which the school board had declared as policy, that the School District of Pittsburgh has no occasion to transport public school pupils out of the district.

Act 372 provides simply that if a district decides to offer transportation it must provide it to all resident pupils, whether in attendance at public or non-public schools within the district and outside district boundaries to a distance of ten miles. Pennsylvania public school children have for years been transported at public expense to schools without regard to district boundaries. Section 1361 in its original form, reproduced at the head of this opinion, makes no mention of district boundaries; it authorized boards to provide for the "free transportation of any resident pupil to and from the public schools." Exceptional

children,[2] pupils attending vocational technical schools[3] and children having need of special services not available in the district are regularly transported to facilities located in other districts. The Public School Code of 1949 authorizes the assignment of public school pupils to schools in other districts,[4] establishes a right of pupils in certain circumstances to attend public schools in districts closer to their residence[5] or in districts of their former residence[6] or schools in other states.[7] In short, there is not and never has been anything sancrosanct about the boundaries of public school districts either with respect to bussing or attendance, and, in fact, Pennsylvania public school children have and do now in proper cases attend and are provided transportation to schools located outside their district boundaries. It cannot be said, therefore, that Act 372's requirement that if transportation is provided at all, it must be provided to pupils attending schools outside district boundaries, is intended to accommodate only pupils attending church schools or that it does or will have that effect generally in Pennsylvania. The facts that the School District of Pittsburgh presently has no occasion to transport public school pupils outside the district and that the school board has declared, contrary to statutory law, that it will not do so, provide no foundation for a declaration that the primary effect of a statute requiring the board to transport all resident pupils to their schools within or without the district is to advance the religion of pupils who would

---

[2] Public School Code of 1949, Section 1374, *as amended*, 24 P.S. §13-1374.

[3] Section 1809, 24 P.S. §18-1809.

[4] Section 1310, 24 P.S. §13-1310, Section 1312, 24 P.S. §13-1312.

[5] Section 1313, 24 P.S. §13-1313.

[6] Section 1314, 24 P.S. §13-1314.

[7] Section 1315, 24 P.S. §13-1315.

be transported to church schools. Act 372 makes no distinction in conferring its benefits between Pennsylvania public and nonpublic pupils. The fact that in one of the hundreds of school districts in Pennsylvania, most or all of the recipients of one of the benefits conferred by the statute happen to be pupils who attend church schools does not demonstrate the legislation's invalidity. Act 372 confers its benefits equally upon pupils attending public and church schools; and this fact distinguishes Act 372 from the statutes struck down on Establishment Clause grounds in *Americans United for Separation of Church and State v. Benton*, 413 F. Supp. 955 (D. Iowa 1975), and *Members of Jamestown School Committee v. Schmidt*, 427 F. Supp. 1338 (D. R.I. 1977), where the statutes under consideration were found to provide transportation benefits to children attending sectarian schools which were not available to children attending public schools.

In *West Morris Regional Board of Education v. Sills*, 58 N.J. 464, 279 A.2d 609 (1971), the Supreme Court of New Jersey had before it for review a revised version of the same school transportation statute upheld in *Everson v. Board of Education, supra.* It will be remembered that the earlier statute required that nonpublic school pupils should be transported on established public school bus routes. The revised version of the New Jersey Statute required school districts providing transportation to public school pupils also to transport pupils of nonpublic schools to their places of attendance not more than 20 miles from their residences. Noting that the numerically dominant beneficiaries of the statute would be parochial school students, the New Jersey Court nevertheless concluded that the statute remained a measure to aid pupils, not schools, and that its purpose and primary effect were not to advance religion.

The School District has not overcome the strong presumption of Act 372's constitutionality. *Prichard v. Willistown Township School District*, 394 Pa. 489, 147 A.2d 380 (1959); *Rhoades v. Abington Township School District, supra.*

The School District also contends that Section 1361 as amended by Act 372 by its terms does not require it to transport nonpublic students beyond district boundaries; that the statute requires it to make provision for transporting nonpublic pupils identical to that made for public school pupils; and that because by chance, self-elevated to policy, it does not transport public school pupils outside the district, its refusal to transport nonpublic pupils outside the district does not violate the statute. It is too clear for serious argument to the contrary that the purpose of Act 372 was to require school districts providing free transportation to public schools to provide the same service to church school pupils, which *Everson v. Board of Education, supra,* and *Rhoades v. Abington Township School District, supra,* had held not to be violative of the Establishment Clause. The first sentence of the Act declares that a school district may provide free transporation to all resident pupils to their schools, public or nonpublic, located within district boundaries or outside district boundaries at a distance not exceeding ten miles. The second sentence adds that if the district provides transportation to public school pupils ''to or from such schools'' it must make ''identical provision'' for the transportation of pupils who attend nonpublic schools ''to and from such schools.'' The Act means (1) that if the district chooses to provide free transportation at all it shall provide it to all pupils, public and nonpublic, attending schools within the district or without the district at a distance not exceeding ten miles, and (2) that the transportation services provided to nonpublic school

pupils must be the same as those provided to public school pupils. The appellant School District's reading of the statute as permitting it to refuse to transport nonpublic school children to areas where it has no occasion to transport public school children is twice mistaken. First, to construe the statute as allowing school boards to set aside areas where it will transport no pupils, renders the statute's description of the schools to which transportation will be provided as those within the district and without the district to a distance of ten miles, of uncertain application, if not redundant. Second, having provided in the first sentence of Act 372, that all resident pupils should be transported to their schools within the district or outside to a distance of ten miles, the Legislature had no need to provide in the second sentence that "identical provision" should be made for nonpublic school pupils as was made for public school pupils, unless the quoted phrase refers to something other than the location of schools attended. We agree with the Attorney General who says in his Official Opinion that "identical provision" refers to such matters as the kinds of transportation furnished and the eligibility of individual pupils based on distance from schools, the location of shelters and the existence of hazardous traffic conditions, as described in Section 1362 of the Code, 24 P.S. §13-1362.

The School District also challenges the Secretary's final order as it relates to and seeks to affect its State transportation reimbursement subsidy. The order, made in August 1976, declared that the School District's subsidy paid for the 1973-1974 school year should be "recovered and hereby withheld" until the School District transported all eligible nonpublic school pupils and until it agreed to reimburse parents of nonpublic pupils for transportation costs for 1973-1974, 1974-1975 and 1975-1976.

In fact, all of the School District's transportation subsidies have been paid to date. The proceeding below related, of course, only to the 1973-1974 subsidy. The subsidies for years after 1973-1974 may have been paid because they were not involved in the litigation; the 1973-1974 subsidy may have been paid because the litigation was much delayed through no fault of the School District. In September 1976, we stayed the Secretary's order pending this review because the issues seemed substantial and because the matter had been delayed in the Department.

The authorities advanced by the Department of Education for the order as it respects subsidy are sections of the Public School Code of 1949. Section 1357, 24 P.S. §13-1357, authorizes the Secretary, after notice and hearing, to "withhold and declare forfeited" the transportation subsidy of a school district which is not complying with the transportation provisions of the Code. Section 2543, 24 P.S. §25-2543, authorizes the Department of Education to withhold the subsidy of any school district until it complies with law or regulation. It is apparent that neither provision authorizes the withholding of a school district's subsidy until it agrees to pay unnamed private persons unspecified amounts of money which the Secretary believes should be paid. Nor do we find anything in the Code which authorizes the recovery, presumably from future subsidies, of subsidies paid in years past in full knowledge of a district's practice believed to be unlawful. We will therefore set aside the Secretary's order as it relates to the School District's transportation subsidy, without prejudice to the Secretary's power to withhold future subsidies if the School District should fail to comply with the law as declared in this litigation.

Finally, we point out that this case is not concerned with field trips, with respect to which Section

1361 contains a provision very similar to the one struck down by the United States Supreme Court in *Wolman v. Walter,* 97 S.Ct. 2593 (1977).

ORDER

AND Now, this 10th day of February, 1978, paragraph 1 of the Secretary of Education's final order dated August 25, 1976, amended August 30, 1976, requiring the School District of Pittsburgh to "transport all eligible school children beyond the school district boundaries in accordance with the ten mile mandated requirement in Act 372" is affirmed; paragraph 2 thereof is vacated in its entirety, without prejudice to the Secretary's right to take future action without regard to subsidy as provided by law.

