JUNE 2, 1980

No. 79–1295. MCKEESPORT AREA SCHOOL DISTRICT v. PENNSYLVANIA DEPARTMENT OF EDUCATION. Appeal from Pa. Commw. Ct. dismissed for want of substantial federal question. MR. JUSTICE STEVENS would note probable jurisdiction and set case for oral argument.

MR. JUSTICE WHITE, with whom MR. JUSTICE REHNQUIST joins, concurring.

Under Pennsylvania law, a public school district must provide nonpublic school children with transportation to and

from school and transportation for educational field trips if those services are provided to public school children. Pa. Stat. Ann., Tit. 24, § 13–1361 (Purdon Supp. 1979–1980). The present controversy centers on that portion of the statute dealing with transportation to and from school. MR. JUSTICE BLACKMUN's concurring opinion, however, *post,* at 978, states that it "is not automatically apparent from the jurisdictional statement and the motion to dismiss that have been filed with this Court, or from the summary opinion of the [Pennsylvania] Commonwealth Court," that the constitutionality of the field-trip provision is not before us. I write both to demonstrate that the absence of the field-trip issue is absolutely clear and to analyze the law that MR. JUSTICE BLACKMUN would apply to this case if the field-trip issue were present.

I

In *School District of Pittsburgh* v. *Pennslyvania Dept. of Education,* 443 U. S. 901 (1979), we dismissed for want of a substantial federal question an appeal challenging the constitutionality of the same statute challenged here. The question presented by the jurisdictional statement in *School District of Pittsburgh* reads as follows: "Whether Pennsylvania Act 372 of 1972 [Act of Dec. 29, 1972, P. L. 1726, No. 372, amending § 1361 of the Public School Code of 1949 (24 P. S. § 13–1361, as amended)] requiring school districts to transport resident nonpublic school pupils to and from schools located up to 10 miles beyond district boundaries violates the Establishment Clause of the First Amendment of the Constitution of the United States because of the Act's primary effect of advancing religion in addition to fostering excess entanglement of the state with religion." Juris. Statement, O. T. 1978, No. 78–1614, p. 3. The question presented by the jurisdictional statement in the instant case is identically phrased. Juris. Statement 4. Because a ruling of dismissal for want of a substantial federal question is a judgment on the merits, *Hicks* v.

*Miranda,* 422 U. S. 332, 344 (1975), and because this case presents the same challenge to the same statute that we rejected in *School District of Pittsburgh,* the same outcome properly follows here.

## II

Nor can it be maintained that, although the identical statute and constitutional arguments are involved in both cases, *School District of Pittsburgh* involved a different application of the statute and thus that a different legal response is occasioned here. The instant litigation commenced with a show-cause order emanating from the Pennsylvania Department of Education, an order that placed in jeopardy under the statute appellant school district's public transportation reimbursement for the 1973–1974 school year. The order was premised not on any district action regarding field trips, but on the district's alleged refusal to transport students to five specified nonpublic schools beyond district boundaries in violation of the statute. Juris. Statement 7–8. Similarly, in *School District of Pittsburgh,* the litigation commenced with a show-cause order from the Department of Education threatening the appellant district's public transportation reimbursement for the 1973–1974 school year and relying on the district's alleged refusal to transport students to 20 specified institutions located beyond district boundaries. Juris. Statement, O. T. 1978, No. 78–1614, pp. 7–8.

In short, both cases involve controversies surrounding transportation to nonpublic schools outside the relevant district in accordance with a statute that also happens to provide for educational field trips for nonpublic school children. Neither case, however, involves any claim that the field-trip provision, as distinguished from the provision for transportation to and from nonpublic schools, is a forbidden establishment of religion.[1] In neither case did the state courts address such an

---

[1] Even a cursory glance at the statutory language, see *post,* at 977, n. *, confirms that the two provisions are distinct and severable. School

issue, and in neither was the field-trip provision expressly included in or subsumed by the question presented in the jurisdictional statement. Indeed, the Pennsylvania Supreme Court in *School District of Pittsburgh,* upon which case the Pennsylvania Commonwealth Court in the instant suit relied, App. to Juris. Statement 4a, expressly declared that the field-trip "portion of Act 372 is not before us" and that the court "need not consider the constitutionality of the field trip provision." *Springfield School Dist.* v. *Department of Ed.,* 483 Pa. 539, 553, n. 6, 397 A. 2d 1154, 1161, n. 6 (1979). It is apparent, therefore, that we have no jurisdiction to decide the validity of the part of the statute dealing with field trips. *Cardinale* v. *Louisiana,* 394 U. S. 437 (1969); *Crowell* v. *Randell,* 10 Pet. 368, 391 (1836). See R. Stern & E. Gressman, Supreme Court Practice § 3.27, p. 214 (5th ed. 1978) ("It has long been established that the Supreme Court is vested with no jurisdiction unless a federal question was raised and decided in the state court below").

### III

Affirming this case thus would involve no inconsistency with *Wolman* v. *Walter,* 433 U. S. 229 (1977), where this Court saw lurking behind a routine exercise in local pedagogy, the educational field trip, the menacing hulk of an established state religion. Since MR. JUSTICE BLACKMUN's concurrence adverts to *Wolman* as authority in this area, however, that case merits further examination.

In *Wolman* the Ohio Legislature had enacted a multifaceted program designed to provide assistance to nonpublic schools, presumably in recognition of the central importance of these schools in fulfilling the Nation's educational mission. See *Committee for Public Education* v. *Nyquist,* 413 U. S. 756, 813–820 (1973) (WHITE, J., dissenting). The program in-

---

district action that implicates one provision need not, and does not here, implicate the other.

cluded, *inter alia,* the loaning of secular textbooks to nonpublic school students or their parents; the supplying to nonpublic schools of standardized tests and scoring services; and the granting to nonpublic schools of field trips and transportation services such as are provided to public school students. The Court found certain aspects of the program acceptable under the Establishment Clause—*e. g.,* secular textbooks, standardized tests and scoring—but other aspects, including the field-trip provision, did not fare so well.

The Court believed that the field-trip provision had several troubling features. First, "the nonpublic school controls the timing of the trips and, within a certain range, their frequency and destinations," indicating that "the schools, rather than the children, truly are the recipients of the service. . . ." 433 U. S., at 253. Second, the Court observed that, "although a trip may be to a location that would be of interest to those in public schools, it is the individual teacher who makes a field trip meaningful," *ibid.,* and this poses "an unacceptable risk of fostering of religion [as] an inevitable byproduct." *Id.,* at 254. Finally, to ensure that nonpublic schools do not pursue sectarian ends on their field trips would entail supervision by public school authorities, which "would create excessive [governmental] entanglement" in the affairs of sectarian institutions. *Ibid.*

In the present case, as in *Wolman,* we are not faced with a legislative enactment evincing a sectarian purpose. *Id.,* at 236. Fortunately, all of us continue to regard the achievement of educational quality as a valid secular end that States may pursue. A secular legislative purpose, however, is only one of the Court's Establishment Clause indicia. To pass muster a statute must also have "a principle or primary effect that neither advances nor inhibits religion" and "must not foster an excessive government entanglement with religion." *Ibid.* See *Roemer* v. *Maryland Public Works Bd.,* 426 U. S. 736, 748 (1976); *Committee for Public Education* v. *Nyquist,*

*supra*, at 772–773; *Lemon* v. *Kurtzman,* 403 U. S. 602, 612–613 (1971). In *Wolman,* the Court concluded that the challenged statute fails the latter two tests by subsidizing field trips for nonpublic school students.

What is the "principal or primary effect" of such a provision? The most reasonable appraisal surely suggests that the principal or primary effect of field trips for nonpublic school students is that boys and girls whose parents have exercised their constitutional right to send their children to private schools, *Pierce* v. *Society of Sisters,* 268 U. S. 510 (1925), will expand their educational horizons, just as the public school children benefiting from the same experience will expand theirs. Is this a danger from which we must shield the American public? The Court in *Wolman* failed to explain why we should not consider the venerable institution of the field trip as firmly grounded in sound educational policy and the effect sought to be created by educators and legislators as pedagogical and not religious. In *Wolman,* the Court could do no more than voice insubstantial and baseless fears that field trips might be used for religious indoctrination.

And what of excessive entanglement? As I read the instant statute, the State of Pennsylvania has devised no mechanism for "policing" nonpublic schools. The Supreme Court of Pennsylvania has similarly concluded that the "Act before us does not in any manner require the state to engage in 'a comprehensive, discriminating and continuing' surveillance of the nonpublic school teachers." 483 Pa., at 566, 397 A. 2d, at 1168, quoting *Lemon* v. *Kurtzman, supra,* at 619. Nor had the State of Ohio in *Wolman* devised such a mechanism. Yet there the Court, without the benefit of any record facts showing actual entanglement, went on to conclude that, if the State of Ohio were ever to police nonpublic school field trips, excessive entanglement would result.

The precedential—or, for that matter, the persuasive—force of such *ex cathedra* wanderings is deservedly minimal. A decision that concedes a secular purpose, describes no actual

religious effect, and allows that there is no present excessive entanglement furnishes very little guidance for subsequent Establishment Clause inquiries. Insofar as field trips were concerned, *Wolman,* at bottom, was a decision predicated on fear of a series of unsubstantiated eventualities: What *if* the nonpublic school controls the timing, frequency, and destination of field trips so as to create a religious effect? 433 U. S., at 253. What *if* a nonpublic school teacher contrives, in making the field trip "meaningful," to exalt religion? *Ibid.* What *if* the State were ever to police nonpublic schools to make sure the field trips remained secular in character? *Id.,* at 254.

Responding to such fears is a difficult, if not impossible, task. One can say "it isn't so" on the indisputable ground that "it isn't." This would be one way of declining to find in the record what is not there. Perhaps the best response, however, is to observe that we ought "not assume that teachers in parochial schools will be guilty of bad faith or any conscious design to evade the limitations imposed by the statute and the First Amendment," *Lemon* v. *Kurtzman, supra,* at 618, quoted in *Wolman* v. *Walter,* 433 U. S., at 254, and to remind the Court "that legislation having a secular purpose and extending governmental assistance to sectarian schools in the performance of their secular functions does not constitute 'law[s] respecting an establishment of religion' forbidden by the First Amendment merely because a secular program may incidentally benefit a church in fulfilling its religious mission." *Lemon* v. *Kurtzman, supra,* at 663–664 (WHITE, J., concurring in part and dissenting in part).[2]

MR. JUSTICE BLACKMUN, with whom MR. JUSTICE BRENNAN joins, concurring.

Section 1361 of the Pennsylvania Public School Code of 1949 (Pa. Stat. Ann., Tit. 24, § 13–1361 (Purdon 1962)), as

---

[2] In this respect it is useful to bear in mind MR. JUSTICE BLACKMUN's

amended by 1972 Pa. Laws No. 372,* authorizes a public
school district of the Commonwealth of Pennsylvania to
provide free transportation for its kindergarten, elementary,
and secondary school pupils, and also to provide free trans-
portation to and from any point in the Commonwealth for
educational field trips. The statute states, in addition, that
when such transportation is provided for public school pupils,
the district "shall also make identical provision" for pupils
who attend nonprofit, nonpublic schools located within the
district or outside the district at a distance not exceeding 10
miles.

admonition in *Roemer* v. *Maryland Public Works Bd.*, 426 U. S. 736, 747
(1976) (footnote omitted), quoted in *Committee for Public Education* v.
*Regan*, 444 U. S. 646, 658, n. 6 (1980):

"The Court has not been blind to the fact that in aiding a religious institu-
tion to perform a secular task, the State frees the institution's resources
to be put to sectarian ends. If this were impermissible, however, a church
could not be protected by the police and fire departments, or have its
public sidewalk kept in repair. The Court never has held that religious
activities must be discriminated against in this way."

*"The board of school directors in any school district may, out of the
funds of the district, provide for the free transportation of any resident
pupil to and from the kindergarten, elementary school, or secondary school
in which he is lawfully enrolled, provided that such school is not operated
for profit and is located within the district boundaries or outside the dis-
trict boundaries at a distance not exceeding ten miles by the nearest public
highway, . . . and to and from any points in the Commonwealth in order
to provide field trips for any purpose connected with the educational
pursuits of the pupils. When provision is made by a board of school
directors for the transportation of public school pupils to and from
such schools or to and from any points in the Commonwealth in order to
provide field trips as herein provided, the board of school directors shall
also make identical provision for the free transportation of pupils who
regularly attend nonpublic kindergarten, elementary and high schools not
operated for profit to and from such schools or to and from any points
in the Commonwealth in order to provide field trips as herein provided."
Pa. Stat. Ann., Tit. 24, § 13–1361 (Purdon Supp. 1979–1980).

Appellant district challenged the Pennsylvania statute as violative of the Fourteenth Amendment's Equal Protection Clause and of the First Amendment's Establishment Clause. The Commonwealth Court of Pennsylvania upheld the statute against that challenge. 38 Pa. Commw. 290, 392 A. 2d 912 (1978). The Supreme Court of Pennsylvania denied a petition for allowance of an appeal.

I join the Court's dismissal of this case only on the specific assumption that the issue of the constitutionality of the field-trip provision of the Pennsylvania statute is not before us. The absence of that issue, for me at least, is not automatically apparent from the jurisdictional statement and the motion to dismiss that have been filed with this Court, or from the summary opinion of the Commonwealth Court. That opinion, however, states: "No issue of law or fact distinguishes this case from earlier cases decided by this Court and upholding the Secretary's interpretation of the Act and the Act's constitutionality as so interpreted." 38 Pa. Commw., at 291, 392 A. 2d, at 912. That court's "earlier cases" cited are *School Dist. of Pittsburgh* v. *Commonwealth Dept. of Ed.*, 33 Pa. Commw. 535, 382 A. 2d 772 (1978); *Springfield School Dist.* v. *Commonwealth Dept. of Ed.*, 35 Pa. Commw. 71, 384 A. 2d 1049 (1978); and *Pequea Valley School Dist.* v. *Commonwealth Dept. of Ed.*, 36 Pa. Commw. 403, 387 A. 2d 1022 (1978).

On appeal to the Supreme Court of Pennsylvania, those three decisions of the Commonwealth Court were affirmed by a divided vote in a single opinion. *Springfield School Dist.* v. *Department of Ed.*, 483 Pa. 539, 397 A. 2d 1154 (1979). In its opinion, the Supreme Court of Pennsylvania construed the basic free-transportation provision of the Pennsylvania statute in such a way as to alleviate federal constitutional concern. It specifically noted, however, that the field-trip provision of the Act "is not before us in these appeals," and that

the constitutionality of the field-trip provision need not be considered. *Id.*, at 553, n. 6, 397 A. 2d, at 1161, n. 6. The court went on to observe, *ibid.*, that the Attorney General of Pennsylvania has ruled the field-trip provision of the Act unconstitutional in its application to sectarian nonpublic schools. 1977 Op. Atty. Gen. No. 15.

In the present case I therefore assume that when the Commonwealth Court observed that no issue of law or fact distinguished this case from its cited "earlier cases," it necessarily means that the constitutionality of the field-trip provision was not at issue. It is only on that assumption that I join the Court in its dismissal of the appeal, for in *Wolman* v. *Walter*, 433 U. S. 229, 252–255 (1977), the Court flatly ruled that field-trip reimbursements to parochial schools are violative of the First Amendment. The continuing vitality of *Wolman* as controlling precedent in this area was recognized in *Committee for Public Education* v. *Regan*, 444 U. S. 646, 654 (1980).