## Grunwald v. McKeesport Area School District

M. *Lawrence Shields, III*, for plaintiffs.

*Lawrence J. O'Toole, Jr., Justin M. Johnson, John P. Edgar* and *Harry F. Klodowski, Jr.*, for defendants.

SILVESTRI, *J.*, September 18, 1980—This case concerns the nature of rights conferred by the Public School Code of March 10, 1949, P.L. 30, as amended by Act 372 of December 29, 1972, P.L. 1726, 24 P.S. §13-1361, which requires public school districts to provide free transportation to nonprofit nonpublic school students who attend schools within ten miles outside the boundaries of the school district in which they reside, on an equal basis to the transportation furnished to students who attend schools within the school district.[1]

The Board of Education of the School District of Pittsburgh (Pittsburgh), and the Board of Directors of the McKeesport Area School District (McKeesport) were among the school districts in the state which questioned the constitutionality of Act 372

1. The code provides in pertinent part as follows: "The board of school directors in any school district may, out of the funds of the distirct, provide for the free transportation of any resident pupil to and from the kindergarten, elementary school, or secondary school in which he is lawfully enrolled, provided that such school is not operated for profit and is locted within the district boundaries or outside the district boundaries at a distance not exceeding ten miles by the nearest public highway . . . When provision is made by a board of school directors for the transportation of public school pupils to and from such schools . . . the board of school directors shall also make identical provision for the free transportation of pupils who regularly attend nonpublic kindergarten, elementary and high schools not operated for profit to and from such schools. . . ." 24 P.S. §13-1361(1).

and refused to provide the transportation pending the resolution of the constitutional questions. In School District of Pittsburgh v. Department of Education, 33 Pa. Commonwealth Ct. 535, 382 A. 2d 772 (1978), the Commonwealth Court upheld the constitutionality of Act 372, and the Pennsylvania Supreme Court affirmed this decision: Springfield School District v. Dept. of Education, 483 Pa. 539, 397 A. 2d 1154 (1979). The United States Supreme Court refused to hear an appeal, citing the lack of a substantial Federal question: 443 U.S. 901 (1979). Pittsburgh and McKeesport began providing the transportation required by the statute in September, 1979.

The present suit was instituted when the Grunwalds, residents of McKeesport, filed a class action complaint seeking an injunction and money damages against Pittsburgh and McKeesport. Frank J. and Anna L. Grunwald sued in a representative capacity both in their own right, as parents of pupils affected by the act and its violation, and on behalf of their children, pupils affected by the act. Thus, two classes of plaintiffs were created, denominated a "pupil class" and a "parent class." Representative plaintiffs have sought both an injunction and money damages on behalf of both pupils and parents.

The court by order dated July 22, 1980 has substituted the Baileys, residents of Pittsburgh, as class representatives in the case against Pittsburgh. The parties have agreed of record that the requested injunctive relief is moot. The sole remaining issue is plaintiffs' request for money damages to compensate for transportation provided between the effective date of the statute and the dates when Pittsburgh and McKeesport began providing the transportation. Initially, we find that the claims for

money damages on behalf of the pupils must be denied. The failure of defendant school districts to provide transportation as required under the act created an expenditure by parents to provide transportation for their children. Furthermore, the pupils suffered no emotional distress for which they can recover.

Defendants Pittsburgh and McKeesport have moved this court to grant summary judgment in their favor and against plaintiffs on the issue of liability for money damages. Defendants assert that there is no private right of action for damages for failure to comply with Act 372.[2]

We hold that no private right exists to sue for damages based on a failure to comply with Act 372. The violation of a statute and resulting injury to a person has not always given rise to a private cause of action in favor of that injured person. Rather, courts must first determine whether the legislature intended the creation of a private cause of action when violation of a statute causes an injury for which an indiviudal seeks redress. See Touche Ross & Co. v. Redington, Trustee, 422 U.S. 560 (1979); Crawford v. Pituch, 34 Erie 74 (1951), rev'd on other grounds, 368 Pa. 489, 84 A. 2d 204 (1951).

---

2. Before hearing arguments on either motion, the representative plaintiffs moved that this court dispose of their certification motion prior to the determination of defendants' summary judgment motions. Representative plaintiffs based their motion on Pa.R.C.P. 1715(a), which prohibits the entering of summary judgments, inter alia, in favor of or against a class until the court has disposed of the issue of certification of the class. The rule provides, however, that a court may proceed otherwise in its discretion "by special order." For purposes of judicial economy, this court found it beneficial to issue a special order and determine the summary judgment issue first, because it goes to the right of plaintiffs to bring the action.

The question, therefore, becomes a matter of statutory construction.

Act 372 does not expressly grant private individuals any right to sue a school district for its failure to provide the transportation required under the act. Nor does the legislative history provide any indication that the legislature intended such rights of action to exist. See Pa. House Legis. Journal, May 23, 1972, at 2427-28; Id., May 31, 1973, at 2919-21; Id., Oct. 4, 1972, at 3986-88; Pa. Senate Legis. Journal, Oct. 4, 1972, at 1948-1953.

Legislation does exist which provides a mechanism for enforcement of the statute and whatever obligations and privileges it confers. The Act of October 21, 1965, P.L. 601, sec 57, 24 P.S. §25-2543, in providing for reimbursements by the state to individual school districts for amounts expended in transporting students, also permits the State Department of Public Instruction to "withhold such reimbursement . . . permanently, or until the school district has complied with the laws or regulations of the State Board of Education." Also, the Public School Code of March 10, 1949, P.L. 30, sec. 1357, 24 P.S. §13-1357, empowers the Superintendent of Public Instruction to withhold or declare forfeited any state appropriations to any school district which fails to comply with the provisions of the article to which Act 372 was amended.

The Statutory Construction Act, 1 Pa.C.S.A. §1504, provides that: "In all cases where a remedy is provided or a duty is enjoined or anything is directed to be done by any statute, the directions of the statute shall be strictly pursued, and no penalty shall be inflicted, or anything done agreeably to the common law, in such cases, further than shall be necessary for carrying such statute into effect." In

the present case, the statutory penalties provided for failure to comply with statutory requirements precludes the existence of any other legal avenues to force compliance. "[I]t is the rule both federally and in this State that where a statute creates a new offense and prescribes the penalty therefor or where it declares a new right and sets forth a remedy, the prescribed remedy is exclusive." Crawford, supra, 368 Pa. at 493, 84 A. 2d at 206. To surpass the limitations imposed by the doctrine of exclusivity of remedy requires a demonstration of legislative intent absent in this case.[3]

The Federal courts have dealt long and extensively with the problem of inferring a private right of action when none is expressly provided in the statute in question. In Cort v. Ash, 422 U.S. 66, 95 S.Ct. 2080 (1975), the Supreme Court made its first comprehensive delineation of what must be shown for a court to infer a cause of action. "First, is the plaintiff 'one of the class for whose *especial benefit* the statute was enacted' . . . that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? . . . Third, is it consistent with the underlying purposes of the legislative scheme to imply a remedy for the plaintiff? . . . And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the

---

3. Plaintiffs argue that the doctrine of exclusivity is not applicable here because legislation related to Act 372 provides only an administrative mechanism for its enforcement, and not a *remedy* for possible harm suffered by a party. But this argument begs the question whether plaintiffs herein have specific rights cognizable under Act 372, which rights would invoke their right to bring this suit. The extent to which plaintiffs benefit or acquire rights from Act 372 is discussed infra.

States, so that it would be inappropraite to infer a cause of action based solely on federal law?" 422 U.S. at 78, citations omitted. (Emphasis in original.)

In Touche Ross, supra, the test was redefined, placing emphasis on the process of statutory construction to resolve the central question of whether the legislature *intended* to create a private cause of action. Touche Ross, 442 U.S. at 568. The initial criterion of Cort v. Ash—whether the statute provides an "especial benefit" for plaintiff's class such that a right is created in that class—is no longer an important factor in the prescribed analysis. Touche Ross treated this matter with brevity, stating that "the mere fact that §17(a) [of the Securities Exchange Act of June 6, 1934, 48 Stat. 897, as amended, 15 U.S.C.A. §78(q)(a)] was designed to provide protection for brokers' customers does not require the implication of a private damages action in their behalf." 442 U.S. at 578. Apparently the court considered the question of special benefit a difficult yet unhelpful one. Earlier in the opinion the court stated the purpose of section 17(a), which institutes a reporting requirement for broker-dealers of securities to enable government authorities to perform their oversight and regulatory functions. Like many other statutes, this law may benefit a class not specifically named in the statute, but the class' benefit may be said to be indirect instead of direct. The question of benefit thus reverts to an analysis of legislative intent, which should be the sole focus of discussion, unhampered by extraneous and unhelpful issues such as benefit.

Recently, the Fifth Circuit Court of Appeals in U.S. v. Capelletti Bros., Inc., _____ F. 2d _____ (1980), held that section 1 of the Davis-Bacon Act,

requiring Federal construction contracts to contain provisions that laborers and mechanics be paid no less than locally prevailing wages, does not impliedly create a private right of action in favor of workers injured by their employer's failure to pay required wages. The court side-stepped the "especial benefit" issue, first construing that question and the question of legislative intent to create a right in favor of plaintiffs to be identical, then holding that the statute involved imposed a duty only on Federal agencies to ensure the inclusion in contracts of certain language. Performance of this duty satisfies the statute, and the workers potentially affected benefit "indirectly and not as a result of any right conferred directly upon their class." _____ F. 2d at _____. The balance of the opinion treated other issues of statutory construction. In Rogers v. Frito-Lay, Inc., 611 F. 2d 1074 (5th Cir., 1980), involving a statute similarly requiring Federal contracts to contain provisions requiring contractors to take affirmative action to hire handicapped persons, no private right of action was inferred. "The duty it directly creates is imposed upon federal . . . agencies . . . The statute does not confer a clearly defined right on the benefitted class. . . . [W]hat is apparent is that those who control federal contracts have a duty to make and enforce contracts containing the requisite clause. The handicapped may have simply the right to petition those who administer federal contracts to perform their duty." 611 F. 2d at 1079-80. These cases demonstrate judicial struggles with the red herring of "especial benefit" when statutes beneficially affect a class by imposing duties on another class. Courts typically alter the analysis to ascertain that the legislature has intended to create a private right in

favor of the affected class. Mere benefit is never in itself sufficient to create a private right of action; it must be shown that the legislature intended that the benefit be secured by private lawsuits brought by affected class members.

Act 372 also imposes duties on one class—school districts—to perform an obligation which may be of benefit to another class—students attending certain private schools and their parents. The act does not "unequivocally focus on the benefitted class in their right- or duty-creating language." 611 F. 2d at 1080. We are thus in an area in which courts consider not the question of benefit but the question of legislative intent to create a right of action. Even if benefit remained a factor in determining the existence of an implied right of action, we would question whether a suitable or sufficient benefit to students and parents is created by Act 372. The act does not affect the preexisting duty of parents to educate their children: Public School Code of March 10, 1949, P.L. 30, art. XIII, secs. 1326, 1327, as amended, 24 P.S. §§ 13-1326, 13-1327. Nor does it make it mandatory for parents to utilize the transportation provided in the act; any other form of transportation may be used. In fact, the Pennsylvania Supreme Court, in upholding the constitutionality of Act 372, commented on the nature of the benefits inuring to the parents and students. The benefits are not monetary; "the parents receive only the intangible benefit arising from the knowledge that their children are being safely transported to and from their schools." Springfield Sch. Dist., supra, 483 Pa. at 565, 397 A. 2d at 1167. In Capelletti Bros. and Rogers, the "benefits" consisted of contractual provisions conferring higher wages and employment opportunities, respec-

tively. Even these benefits, more strictly fiscal than that in the present case, did not earn for potential plaintiffs the right to sue for money damages. The alleged benefits claimed to exist here do not of themselves constitute sufficient benefits to enable plaintiffs to bring a private action.

We have touched upon certain elements involved in statutory construction of Act 372 above. Looking to the language of the statute, we find nothing to suggest the intention to create a private cause of action for damages. Statutory language is not vague; it simply speaks to the duty of school districts and provides no hint that private parties— parents and students—may enforce it. Legislative history is mute on the subject of an implied cause of action. Finally, the purpose of the statute is served satisfactorily by the enforcement mechanism provided in the Public School Code. Immediately following the determination of constitutionality of Act 372, defendants complied with the act to avoid further irremediable withholding of transportation reimbursements. Plaintiff class has clearly "benefitted" from the Department's action in withholding reimbursement. It has not been shown that this remedy is ineffective in effectuating the purpose of Act 372. There is no private remedy intended by the legislature in the act or stated elsewhere in the Public School Code which enables plaintiffs to sue for reimbursement for transportation they provided for the school years 1973-74 through 1978-79.

Plaintiffs cite several Pennsylvania cases to support their claim that a right of action for damages is implied in Act 372, but upon examination none of these cases determines the question. Only in Hanlon v. Garnet Valley, 9766 of 1973, Delaware County, was there an award of money damages.

But that case assumed that a right of action for damages existed, and neither discussed it nor considered it an issue in the case. Such issues "neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents." Webster v. Fall, 266 U.S. 507, 511 (1925). The remaining cases cited by plaintiffs, Pepsi v. School District of Aliquippa, (Beaver Co., No. 1791 of 1971), and Farrett v. North Clarion County School Board, (Clarion Co., No. 2 Feb. Term of 1974), concerned purely equitable relief in the form of an injunction directed at defendant school boards to initiate the transportation required under Act 372.

Courts are more willing to infer private causes of action where equitable relief is sought than where plaintiff seeks legal relief in money damages. Injunctive relief merely involves a direction compelling conduct in accordance with stated legislative policy. It does not enlarge upon what the legislature has mandated, even if the statute in question is silent about the rights of private citizens to enforce the legislation by seeking injunctions. The court simply commands that the statute be followed. When a private citizen seeks money damages to compensate him for a right allegedly violated and the statute creating the right is silent on the question of recovery of money damages by actions at law, a court granting relief no longer merely enforces the law, but adds to it, and creates additional policies not stated by the legislature. "The courts are more receptive to implying rights of action in equitable cases when the granting of an injunction or a declaratory judgment does not involve making significant policy decisions beyond those already made by the legislature. Damages remedies, espe-

cially when created after the fact, often involve harsher results than simple equitable relief, thus indicating a complex balancing of interests best left to the legislature." Note, Implied Causes of Action, 51 Univ. of Colorado L. Rev. 355, 392 (1980) (footnotes omitted). Courts are without the authority to provide or enlarge upon remedies not contemplated by the legislature.

Representative plaintiffs argue that this court, having properly assumed jurisdiciton in equity, may retain jurisdiction to grant money recovery, even though the equitable relief initially requested is moot. Representative plaintiffs have cited authority that equity, having assumed jurisdiction, may retain it for all purposes to do justice. However, authority also exists describing situations when equitable jurisdiction is not retained to grant relief properly cognizable at law, as where only some incidental matter in the case is equitable, King v. Clark, 183 Pa. Superior Ct. 190, 130 A. 2d 245 (1957), where the courts finds against plaintiff on his equitable claim, Cella v. Davidson, 304 Pa. 389, 156 Atl. 99 (1931); Lare v. Young, 153 Pa. Superior Ct. 28, 33 A. 2d 662 (1943); or where an adequate remedy or different jurisdiction is provided by statute: Gardner v. Allegheny County, 382 Pa. 88, 114 A. 2d 491 (1955). The principle of retention of jurisdiction is permissive, not mandatory, and its exercise lies within the discretion of the court: Ahrens v. Goldstein, 376 Pa. 114, 102 A. 2d 164 (1954).

Where an action is properly in equity and during the pendency thereof, the equitable relief sought is rendered moot, as in this case, the mere fact that the equitable action as initiated was proper does not automatically confer on the equity court the power to make an award of damages for the period of time

before the equitable relief became moot. The recovery of damages is only permitted as provided by statute or common law; in absence thereof, damages may not be awarded. Here, since as we have held Act 372 does not provide any right of action for damages, despite this case being originally properly filed in equity, damages are not recoverable under said act or at common law.

## ORDER

And now, September 18, 1980, after hearing and upon consideration of the parties' briefs, it is ordered that summary judgment is granted in favor of defendants School District of Pittsburgh and McKeesport Area School District and against plaintiffs, and the complaint of plaintifffs is dismissed.