WEST MORRIS REGIONAL BOARD OF EDUCATION, *ET AL.*, PLAINTIFFS-RESPONDENTS, CROSS-APPELLANTS, v. ARTHUR J. SILLS, *ET AL.*, DEFENDANTS-APPELLANTS, CROSS-RESPONDENTS.

Argued April 26, 1971—Decided June 25, 1971.

466

*Mrs. Virginia Long Annich,* Deputy Attorney General, argued the cause for defendants-appellants, cross-respondents (*Mr. George F. Kugler, Jr.,* Attorney General of New Jersey, attorney).

*Mr. Garret A. Hobart, IV,* argued the cause for plaintiffs-respondents, cross-appellants (*Messrs. Schenck, Price, Smith and King,* attorneys).

*Mr. Arnold H. Chait* argued the cause for defendant-appellant, cross-respondent The Board of Education of The Township of Morris (*Messrs. Vogel, Chait and Wacks,* attorneys).

The opinion of the Court was delivered by

WEINTRAUB, C. J. ▮ Plaintiffs sought a declaration that a statute providing for free transportation of children to private schools was unconstitutional. The principal attack was two-fold: (1) that the statute violated the establishment clause of the church-state provision of the First Amendment to the Constitution of the United States, and (2) that the statute discriminated arbitrarily among pupils attending private schools, in violation of the equal protection clause of

the Fourteenth Amendment. The trial court found against plaintiffs as to the establishment issue, but for them with respect to their equal protection complaint. The trial court also placed its decision on two additional grounds which we find untenable and which require but passing mention.[1] *West Morris Regional Board of Education, Morris County v. Sills*, 110 *N. J. Super*. 234 (Ch. Div. 1970).

Defendants appeal and plaintiffs cross-appeal. The cross-appeal seeks no modification of the judgment itself; rather the object is to place the result upon the more pervasive thesis that the church-state provision bars free public transportation to parochial schools. We certified the matter before argument in the Appellate Division.

The statute under attack is *N. J. S. A*. 18A:39–1.[2] It deals with pupils residing "remote" from any schoolhouse,

[1]The trial court found a violation of *Art*. VIII, § 4, ¶ 2, of the State Constitution which mandates that the income from the perpetual fund for the support of free public schools shall be "appropriated to the support of free public schools, for the equal benefit of all the people of the State." The parties agree that the finding cannot be sustained since the income from that fund is not involved in the transportation program. The other ground used by the trial court was that *Art*. VIII, § 4, ¶ 3, of the State Constitution permits classification of private school students with respect to transportation only upon the basis of distance. We will refer to that proposition later in this opinion.

[2]The statute reads in full:

Whenever in any district there are pupils residing remote from any schoolhouse, the board of education of the district may make rules and contracts for the transportation of such pupils to and from school, including the transportation of school pupils to and from school other than a public school, except such school as is operated for profit in whole or in part.

When any school district provides any transportation for public school pupils to and from school pursuant to this section, transportation shall be supplied to school pupils residing in such school district in going to and from any remote school other than a public school, not operated for profit in whole or in part, located within the State not more than 20 miles from the residence of the pupil provided the per pupil cost of the lowest bid received does not exceed $150.00 and if such bid shall exceed said cost then the parent, guardian or other person having legal custody of the pupil shall be eligible to receive said amount toward the cost of his transportation to a qualified

and authorizes the local board of education to make rules and contracts for their transportation, not only to public schools, but also to private schools, subject, however, to certain exceptions. The equal-protection argument arises out of those exceptions. The church-state issue arises out of the fact that the required transportation includes transportation to parochial schools.

The statute has a relevant history. In an earlier form, it was upheld against the charge that it violated the establishment clause. *Everson v. Board of Education of Ewing Township*, 133 *N. J. L.* 350 (E. & A. 1945), affirmed, 330 *U. S.* 1, 67 *S. Ct.* 504, 91 *L. Ed.* 711 (1947). The statute then required that when a school district provides transportation for public school children living remote from any schoolhouse, it must also supply transportation "from any point in such established school route to any other point in such established school route" to school children residing in such school district "in going to and from school other than a public school, except such school as is operated for profit

---

school other than a public school, regardless of whether such transportation is along established public school routes. It shall be the obligation of the parent, guardian or other person having legal custody of the pupil attending a remote school, other than a public school, not operating for profit in whole or in part, to register said pupil with the office of the secretary of the board of education at the time and in the manner specified by rules and regulations of the State board in order to be eligible for the transportation provided by this section. If the registration of any such pupil is not completed by September 1 of the school year and if it is necessary for the board of education to enter into a contract establishing a new route in order to provide such transportation then the board shall not be required to provide it, but in lieu thereof the parent, guardian or other person having legal custody of the pupil shall be eligible to receive $150.00 or an amount computed by multiplying $0.8333 times the number of school days remaining in the school year at the time of registration, whichever is the smaller amount. Whenever any regional school district provides any transportation for pupils attending schools other than public schools pursuant to this section, said regional district shall assume responsibility for the transportation of all such pupils, and the cost of such transportation for pupils below the grade level for which the regional district was organized, shall be prorated by

in whole or in part." *R. S.* 18:14–8, as amended by *L.* 1941, *c.* 191. The local board of education there provided for transportation by reimbursing the parent of public school pupils for fares paid a common carrier. Obedient to the statute, the board also provided for reimbursement to parents of students who used the same bus routes in attending private schools, all of which were operated by the Roman Catholic Church. The statute was upheld in *Everson* by a divided vote in our State court and by a vote of 5 to 4 in the United States Supreme Court.

After *Everson,* the subject was dealt with expressly in our State Constitution of 1947, to the end that the establishment clause of that Constitution, *Art.* I, ¶ 4, could not be construed to bar transportation for private school pupils. 1 *Constitutional Convention of 1947, Convention Proceedings, pp.* 704–726. The Constitution of 1947 accordingly provides, *Art.* VIII, § 4, ¶ 3:

> The Legislature may, within reasonable limitations as to distance to be prescribed, provide for the transportation of children within the ages of five to eighteen years inclusive to and from any school.

---

the regional district among the constituent districts on a per pupil basis after approval of such cost by the county superintendent. This section shall not require school districts to provide any transportation to pupils attending a school other than a public school where the only transportation presently provided by said district is for school children transported pursuant to chapter 46 of this Title or for pupils transported to a vocational, technical or other public school offering a specialized program. Any transportation to a school, other than a public school, shall be pursuant to the same rules and regulations promulgated by the State board as governs transportation to any public school.

Nothing in this section shall be so construed as to prohibit a board of education from making contracts for the transportation of pupils to a school in an adjoining district when such pupils are transferred to the district by order of the county superintendent, or when any pupils shall attend school in a district other than that in which they reside by virtue of an agreement made by the respective boards of education.

Nothing herein contained shall limit or diminish in any way any of the provisions for transportation for children pursuant to chapter 46 of this Title.

■ We digress for a moment to deal with the question whether *Art.* VIII, § 4, ¶3, quoted immediately above, interdicts the statutory scheme here involved. As we mentioned in footnote 1, *supra,* the trial court found that the statute violated this provision. 110 *N. J. Super.* at 251 and 254. The thesis of that finding is that the phrase, "within reasonable limitations as to distance to be prescribed," sets forth the exclusive basis upon which the Legislature may differentiate or classify students. But the purpose of this constitutional provision being to make it clear that the Legislature may (but need not) transport students to private schools, the quoted phrase seems clearly to be a restriction upon the amount of transportation which may be furnished rather than a prescription of a single basis upon which the beneficiaries of a transportation program may be determined. Hence this section of the Constitution does not bear upon the issue in this case.

Returning to the history of the statute, we note that in *Fox v. Board of Education of West Milford Township,* 93 *N. J. Super.* 544 (Law Div. 1967), it was held that the statute did not authorize transportation to nonpublic school children other than along established public school routes. Thereupon, the Legislature adopted *L.* 1967, *c.* 74, which eliminated the "established school route" provision and directed that free transportation be given children attending a nonpublic school "not more than 20 miles from the residence of the pupil."[3] The statute was further amended by *L.* 1968, *c.* 29, to place a limit of $150 upon the sum to be paid for the transportation of a student attending a nonpublic school.

---

[3] By way of explanation of the 20-mile limitation, we are told that 19.7 miles is the mean of the maximum distances from home to school "of the typical public school pupil — by county." We assume the Legislature adopted a fixed mileage criterion to avoid the administrative difficulties of individual determinations in implementing the legislative purpose to provide equivalent treatment of public and nonpublic school pupils residing in districts which provide transportation for children who live remote from a schoolhouse. The reasonableness of the 20-mile figure is not attacked in this case.

The statute as it presently stands was sustained in *McCanna v. Sills,* 103 *N. J. Super.* 480 (Ch. Div. 1968), against a charge that it violated the establishment clause of the First Amendment, and was sustained in *Board of Education of the Borough of Woodbury Heights v. Gateway Regional High School,* 104 *N. J. Super.* 76 (Law Div. 1968), against a charge that the statute discriminated against pupils in public schools in the circumstances of that case. Neither decision was appealed.

## I

■ As we have said, the trial court rejected plaintiffs' claim that the statute violates the First Amendment ban of any "law respecting an establishment of religion." We agree with the trial court's treatment of that issue. The statute, in all respects relevant to that issue, is as it was when it was upheld in *Everson.*[4] It remains a measure to aid the student rather than the school he attends; its purpose and primary effect are not to advance religion.

Nor does it appear that the Supreme Court of the United States has withdrawn from the majority position in *Everson.* On the contrary, *Everson* was reaffirmed in *Board of Education of Central School Dist. No. 1 v. Allen,* 392 *U. S.* 236, 88 S. Ct. 1923, 20 *L. Ed.* 2d 1060 (1968), where the majority upheld a New York statute requiring local public school authorities to lend textbooks without charge to students attending public and private schools, including parochial schools.

## II

We turn to the question whether the statute violates the equal protection clause of the Fourteenth Amendment. The

---

[4] In *Everson,* all the nonpublic school children in fact attended parochial schools, and that circumstance was noted in the opinions in that case. In the present case, parochial school students, although numerically the dominant beneficiaries of the statute, are not the sole private school beneficiaries.

trial court succinctly summarized plaintiffs' claim that the statute fails to include all the private school children who plaintiffs say must be included, 110 *N. J. Super.* at 241:

Plaintiffs assert that the operation of *N. J. S. A.* 18A:39–1 violates the Equal Protection Clause by reason of 'under-inclusion.' Plaintiffs cite six categories of school children who are excluded from transportation by reason of the operation of the act, to wit: (1) New Jersey residents attending out-of-state schools; (2) students outside the 20-mile radius; (3) pupils attending profit-making private schools; (4) pupils living in districts which only transport handicapped children pursuant to *N. J. S. A.* 18A:46–23; (5) students living in districts which only provide transportation to children attending public vocational schools, and (6) private or parochial nonprofit school pupils residing in a district which provides no transportation to its public schools. Plaintiffs maintain that, by reason of these exclusions, the challenged act denies equal protection to pupils in the excluded categories.

The trial court rejected the first five criticisms. It concluded, however, that the sixth was correct, and upon that basis held that the statute is invalid and hence that transportation may not be provided any private school student. We will deal first with the equal protection charge the trial court upheld and then with the equal protection charges the trial court rejected.

The statute must be considered in the context of other legislation. Attendance at school is mandated with respect to children between the ages of 6 and 16, *N. J. S. A.* 18A:38–25. It having been held to be the constitutional right of a parent to choose to send the child to a private school, *Pierce v. Society of Sisters, etc.,* 268 *U. S.* 510, 45 *S. Ct.* 571, 69 *L. Ed.* 1070 (1925), a statute, *N. J. S. A.* 18A:38–25, permits a parent to seek equivalent instruction elsewhere. Thus children, whether attending a public or a private school, are pursuing a process of education mandated for them, at least between the ages of 6 and 16.

Although *N. J. S. A.* 18A:39–1, the statute here challenged, seems on its face to leave it to each school district to decide whether to transport children living "remote" from

a schoolhouse, defendants say the school disttrict is obliged to do so by reason of still another statute.[5] Defendants refer to *N. J. S. A.* 18A:33–1, which imposes upon each school district the duty to provide "suitable educational facilities." The statute was considered in an earlier form in *Board of Education of Frelinghuysen Township v. Atwood*, 73 *N. J. L.* 315 (Sup. Ct. 1906), affirmed, 74 *N. J. L.* 638 (E. & A. 1907). The forerunner of *N. J. S. A.* 18A:39–1 was also then in existence; it authorized the school district to "make rules and contracts" for the transportation of children "living remote from the school-house." It was held in the case just cited that the required "suitable school facilities" did not include transportation for children living remote from the schoolhouse. The Legislature thereupon amended that statute to include "convenience of access" to the public schools among the "suitable school facilities" which the district was required to furnish. That amendment was held to require the school district to transport children living "remote from the school-house." *Board of Education of Township of West Amwell, etc. v. State Board of Education*, 5 *N. J. Misc.* 152, 135 *A.* 664 (Sup. Ct. 1927).

We note also that the local school board has no discretion with respect to whether a student lives "remote" from the schoolhouse. The Commissioner of Education and the State Board of Education have determined that an elementary student (K–8) cannot be expected to walk more than 2 miles to school, nor a high school student (9–12) more than 2.5 miles. "Remote" has thus been defined administratively. Hence school districts have been obliged to provide transportation to elementary and high school students residing beyond those distances from their assigned schools. The State contributes 75% of the cost of that transportation, *N. J. S. A.* 18A:58–7, and State aid will be withheld if the

---

[5] The correctness of defendants' position was not argued before us. Since it does not disadvantage plaintiffs to say the statutory scheme with respect to "remote" children is thus mandatory, we accept defendants' proposition that this is so.

district fails to meet its obligation to provide suitable educational facilities, including the required transportation. *N. J. S. A.* 18A:33–2. A school district may, but need not, provide transportation to pupils who do not live "remote" from a schoolhouse, but the cost is not included in calculating the amount of State aid for transportation of pupils. *N. J. S. A.* 18A:39–1.1.

To summarize for the purpose of the equal protection issue now under consideration, a school district must transport public school students living more than the stated distances from their assigned schools, and if such transportation is thus required, then the district must also provide transportation for students living within the district who attend a remote private school. Hence the private student will or will not receive transportation depending upon the district of his residence, *i e.,* whether statutes require transportation of public students living in his district. The statistics of the State Department of Education indicate that at the time of the trial below 106,000 remote nonpublic students were then being transported, while 14,000 such students, living in 97 districts which had no remote public school students, received no public transportation. This result, plaintiffs say, denies equal protection of the law, and the trial court agreed.

Plaintiffs contend that if the legislative purpose is to aid the child by getting him to school, on time, and safely (and child-benefit was the legislative objective accepted in *Everson* in rejecting the attack under the establishment clause), then there is no rational basis for conferring that benefit upon some students and not others. Plaintiffs do not go the length of suggesting this benefit could not be conferred solely upon public school students. Rather their aim is to bar transportation of all private school students, and they seek to do so upon the thesis we are now discussing, *i. e.,* that the statute must confer its benefit upon all private school students without regard to the district of their residence or upon none at all. Hence, plaintiffs say, transporta-

tion may not be granted to those private school students who live in school districts which furnish transportation to public schools and denied to those private school students who live in school districts which do not furnish transportation to public schools.

If there is substance to the proposition that all private school students must be treated as a single class without regard to the district of their residence, it is remarkable that it escaped counsel and the Court in *Everson*. There, it will be recalled, transportation was furnished (by way of cash reimbursement for fares paid to common carriers) to private school students but only along transportation routes established for public school students. The statute, then as now, limited the benefit to private school students who lived in districts which furnished transportation to public school students, and indeed the statute then differentiated between private school students even within a single district, extending its benefits only to those who used the public school route. Yet counsel in *Everson* asserted only the establishment issue, and although the majority of the Supreme Court on its own motion noted an equal protection problem, the problem so noted related only to discrimination among private school students on the basis of the attributes of the private schools they attended.[6] No mention was made of the evident fact that the statute did not confer the same benefit upon all private school students without regard to the place of residence, even within a single district. Evidently no one thought that private students represented a single, statewide group entitled to be treated alike without

---

[6] In their footnote 2, the majority in *Everson* mentioned two equal protection problems, neither of which was pursued. One stemmed from the fact the defendant school district's resolution mentioned only *parochial* schools, and the other from the fact that the statute excluded private schools operated for profit. Those facts were probably noted because the dissenting opinions, in dealing with the establishment issue, stressed the omission in the resolution and the exclusion in the statute to emphasize their conviction that the program was intended to aid religion in violation of the establishment clause.

regard to the district of residence or the treatment given public school pupils in the district of their residence.

At any rate plaintiffs' attack rests upon the central assumption that district lines are inherently irrelevant so that all private school students must receive identical treatment as among themselves. It, of course, is elementary that the equal protection clause does not require statewide uniformity in all things. Home rule necessarily runs the other way. If the subject is appropriate for local preference or decision, a statute may provide for local option or referendum. *Two Guys from Harrison, Inc. v. Furman*, 32 *N. J.* 199, 231–232 (1960); *Jamouneau v. Harner*, 16 *N. J.* 500, 517–521 (1954), *cert.* denied, 349 *U. S.* 904, 75 S. Ct. 580, 99 *L. Ed.* 1241 (1955); *Paul v. Gloucester County*, 50 *N. J. L.* 585, 608–609 (E. & A. 1888). See also *James v. Valtierra*, 402 *U. S.* 137, 91 *S. Ct.* 1331, 28 *L. Ed.* 2d 678 (1971); *Salsburg v. Maryland*, 346 *U. S.* 545, 552–553, 74 S. Ct. 280, 98 *L. Ed.* 281, 288–289 (1954); *Lloyd v. Dollison*, 194 *U. S.* 445, 24 *S. Ct.* 703, 48 *L. Ed.* 1062 (1904).

■■ This basic principle applies to education. Thus it may be determined that education is so much a matter of local concern that school districts may be established. *Riccio v. Hoboken*, 69 *N. J. L.* 649, 653 (E. & A. 1903). Although our State Constitution mandates in *Art.* VIII, § 4, ¶ 1, that "The Legislature shall provide for the maintenance and support of a thorough and efficient system of free public schools for the instruction of all the children in the State between the ages of five and eighteen years," it does not demand uniformity of results throughout the State.[7] *Landis v. School District* No. 44, 57 *N. J. L.* 509, 511–512 (Sup. Ct. 1894). Nor does the equal protection clause of the Fourteenth Amendment bar the creation of local school districts or require equality of local appropriations for education. *McInnis v. Shapiro*, 293 *F. Supp.* 327,

---

[7] We of course do not anticipate the question whether the State statutory scheme may, because of local failures, become unequal to the constitutional promise and command.

333, 336 (N. D. Ill. 1968), affirmed, 394 *U. S.* 322, 89 S. Ct. 1197, 22 *L. Ed.* 2d 308 (1969); *Burruss v. Wilkerson,* 310 *F. Supp.* 572 (W. D. Va. 1969), affirmed, 397 *U. S.* 44, 90 S. Ct. 812, 25 *L. Ed.* 2d 37 (1970); *Johnson v. New York State Education Department,* 319 *F. Supp.* 271 (E. D. N. Y. 1970). To the same effect, with respect to school transportation, see *Cartwright v. Sharpe,* 40 *Wis.* 2d 494, 162 *N. W.* 2d 5 (Sup. Ct. 1969). It, of course, would be another matter, if local option were designed for an invidious end, such as racial discrimination. See *Griffin v. County School Board of Prince Edward County,* 377 *U. S.* 218, 84 S. Ct. 1226, 12 *L. Ed.* 2d 256 (1964); *Hall v. St. Helena Parish School Board,* 197 *F. Supp.* 649 (E. D. La. 1961), affirmed, 368 *U. S.* 515, 82 S. Ct. 529, 7 *L. Ed.* 2d 521 (1962); *Lee v. Nyquist,* 318 *F. Supp.* 710 (W. D. N. Y. 1970), affirmed, 402 *U. S.* 935, 91 S. Ct. 1618, 29 *L. Ed.* 2d 105 (1971); *Lackawanna v. Kennedy Park Homes,* 318 *F. Supp.* 669 (W. D. N. Y. 1970), affirmed, 436 *F.* 2d 108 (2 Cir. 1970), *cert.* denied, 401 *U. S.* 1010, 91 S. Ct. 1256, 28 *L. Ed.* 2d 546 (1971). The immediate point is that, at least as of now, Kurland, "Equal Educational Opportunity," 35 *U. Chi. L. Rev.* 583 (1968), there is no constitutional fiat that educational expenditures be identical for all students throughout the State. Benefits may indeed depend upon the district of a student's residence.

In the case at hand, the subject was not left to local option, for, as related above, we have accepted defendants' view that under *N. J. S. A.* 18A:33–1 the school district must transport "remote" public school students, as defined administratively, and that if such transportation is required, it follows that transportation must be furnished to the private school student in accordance with *N. J. S. A.* 18A:39–1. Thus the question is whether identical state-wide treatment, which is not required if the legislative power is delegated for local decision, becomes a constitutional imperative because the Legislature itself made the final decision. We see no reason thus to limit legislative discretion. See

*Griffin v. County School Board of Prince Edward County,* *supra,* 377 *U. S.* at 230–231, 84 *S. Ct.* 1226, 12 *L. Ed.* 2d at 264–265; *Salsburg v. Maryland, supra,* 346 *U. S.* at 551–553, 74 *S. Ct.* 280, 98 *L. Ed.* at 288–289.

The basic legislative theme is apparent. Having required school districts to provide transportation to public school students, the Legislature decided to extend to the student who chooses to attend a remote private school the same transportation benefit which is provided within his school district for those who attend a remote public school. Thus the exercise of the constitutional right to elect to attend a private school is freed of a financial consequence, in this respect.

█ The question is not whether the Legislature could have gone further and ordered transportation for all private school students who live remote from their private schools without regard to the treatment accorded to public school pupils within the districts of their residence. The Legislature may choose from among rational objectives. Here the Legislature chose to extend to the private school student a right to transportation on the same basis upon which transportation would have been available if he attended public school in his district, *i. e.,* remoteness from the school, and in that way to deal evenly with him and the public school student within that district. We see nothing irrational or invidious in this legislative concept, and the legislative choice is not made intolerable merely because another choice might also be reasonable. *Cf. Bailey v. Engelman,* 56 *N. J.* 54, 58–59 (1970).

The case comes readily within the principles recently restated in *Dandridge v. Williams,* 397 *U. S.* 471, 90 *S. Ct.* 1153, 25 *L. Ed.* 2d 491 (1970). That case involved the Federal Aid to Families with Dependent Children (AFDC) program, under which federal funds are made available to States which choose to participate. Each State is free to set its own standard of need and to determine the level of benefits by the amount of funds it devotes to the program. The equal protection issue was whether Maryland could fix

an upper limit on the total amount of aid which any one family unit could receive. In sustaining the maximum provision, the Court said (397 *U. S.* at 485, 90 *S. Ct.* at 1161, 25 *L. Ed.* 2d at 501–502):

In the area of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect. If the classification has some "reasonable basis," it does not offend the Constitution simply because the classification "is not made with mathematical nicety or because in practice it results in some inequality." Lindsley v. Natural Carbonic Gas Co., 220 U. S. 61, 78, 31 S. Ct. 337, 340, 55 L. Ed. 369, 377. "The problems of government are practical ones and may justify, if they do not require, rough accommodations—illogical, it may be, and unscientific." Metropolis Theatre Co. v. City of Chicago, 228 U. S. 61, 69–70, 33 S. Ct. 441, 443, 57 L. Ed. 730, 734.

The Court continued (397 *U. S.* at 486–487, 90 *S. Ct.* at 1162, 25 *L. Ed.* 2d at 503):

But the Equal Protection Clause does not require that a State must choose between attacking every aspect of a problem or not attacking the problem at all. Lindsley v. Natural Carbonic Gas Co., 220 U. S. 61, 31 S. Ct. 337, 55 L. Ed. 369. It is enough that the State's action be rationally based and free from invidious discrimination. The regulation before us meets that test.

We do not decide today that the Maryland regulation is wise, that it best fulfills the relevant social and economic objectives that Maryland might ideally espouse, or that a more just and humane system could not be devised. Conflicting claims of morality and intelligence are raised by opponents and proponents of almost every measure, certainly including the one before us. But the intractable economic, social, and even philosophical problems presented by public welfare assistance programs are not the business of this Court. The Constitution may impose certain procedural safeguards upon systems of welfare administration, Goldberg v. Kelly, 397 U. S. 254, 90 S. Ct. 1011, 25 L. Ed. 2d 287. But the Constitution does not empower this Court to second-guess state officials charged with the difficult responsibility of allocating limited public welfare funds among the myriad of potential recipients.

■ The area within which the State may act to advance the public welfare is vast. The Legislature must have leeway in deciding whether to act, and if so, how far to go. It

would disserve the public interest to say that the Legislature may take no step unless it goes the whole distance which constitutionally could be travelled. Especially is this true when the subject involves the expenditure of public moneys. The competing demands are such that modest objectives must be allowed even though more pervasive ones would be welcome. So long as the limited objective is not invidious in design or effect, a statute may not be invalidated merely because it would also be reasonable to do more.

We therefore conclude that the statute does not deny equal protection of the laws because it provides transportation only to private school students who reside in districts which must furnish transportation to the public schools.

■ As we noted earlier, the trial court rejected the other equal protection challenges. Brief comment will suffice. With respect to the exclusions of students attending out-of-state private schools and students attending schools for profit, there is nothing before us to indicate that there are such students who would otherwise come within the statute. We need not anticipate an attack on their behalf. Nor should we assume their exclusion could not be justified, or that, if it could not, the statute would fall on that account.

■ With respect to students who travel beyond the 20-mile radius, we think it tenable to exclude them since the legislative purpose is to extend to the private school student the same benefit which is mandated for the student of his district who attends public school, and students who attend a private school beyond the 20-mile radius are on that account beyond the legislative purpose.[8] Nor did the exclusion become unreasonable when the statute was amended to provide a limit of $150 upon the cost of transporting one student. That limit was enacted to confine the benefit to students otherwise qualified because in some individual cases the cost of transporting a single student to a private school had proved absurdly high. The Legislature did not intend

[8]See n. 3, *supra*, with respect to the origin of the mileage limitation.

by the dollar limitation to enlarge the class of beneficiaries, and we see no reason to say that the Legislature must either enlarge the class or continue to require inordinate expenditures for a single student.

We see no substance to the further claim that if a district transports handicapped children pursuant to *N. J. S. A.* 18A:46–23, it must transport all private students. There is nothing in the record to suggest that handicapped children are not a rational class for the purpose of transportation, so that all private school students must be treated on a par with the handicapped student. And with respect to the final proposition, that private school students who live in districts which transport children to vocational schools must on that account be given transportation, again the record is barren of proof that vocational school students may not rationally be deemed a separate class with respect to transportation.

The judgment is reversed and the matter remanded for the entry of judgment for defendants.

*For reversal and remandment*—Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and MOUNTAIN—7.

*For affirmance*—None.