299 S.E.2d 34

Frank JANASIEWICZ and
Thomas Holder

v.

The BOARD OF EDUCATION OF the
COUNTY OF KANAWHA, etc., et al.

No. 15536.

Supreme Court of Appeals of
West Virginia.

Dec. 16, 1982.

G. Nicholas Casey, Jr., Lewis, Ciccarello, Masinter & Friedberg, Charleston, for petitioners.

John O. Kizer, Love, Wise, Robinson & Woodroe, Charleston, for respondents.

HARSHBARGER, Justice:

Petitioners have school-age children enrolled in Catholic schools in Kanawha County, West Virginia. They have asked us to require the county Board of Education to provide school bus transportation for their children to and from parochial schools. The board has provided a monetary stipend to parents of parochial school students and permits the children to ride school buses on established public school bus routes.

The petitioners say that the Board has not complied with *State ex rel. Hughes v. Board of Education*, 154 W.Va. 107, 174 S.E.2d 711 (1970). *Hughes* involved this same class of petitioners, the same respondent, and the same issue: whether W.Va. Code, 18–5–13(6)(a) allows a county school board to provide bus transportation to sectarian school students, and if so, whether this provision violates our state or federal constitutions. Its Syllabus Point 2 determined:

> When a county board of education has provided a system for the transportation of school children by bus, pursuant to the provisions of Code, 1931, 18–5–13(6), as amended, the refusal of the county board of education to provide such transportation to certain children of the county, merely because they attend a Catholic parochial school, denies to such children and their parents the equal protection of the laws which is guaranteed by the Fourteenth Amendment of the Constitution of the United States and also denies to such children and their parents their right to religious freedom guaranteed by the First Amendment of the Constitution

of the United States and by Section 15 of Article III of the Constitution of West Virginia.

■ The Board of Education asks us to reconsider *Hughes*, but petitioners contend that the issue is *res judicata* to these parties. If *Hughes* is wrong, it is not immutable no matter who challenges it. *See, e.g., Griffin v. State Board of Education*, 296 F.Supp. 1178, 1182 (E.D.Va.1969). *Res judicata* and *stare decisis* are important judicial doctrines, but needs for consistency, stability and predictability cannot perpetuate incorrect interpretations or misapplications of laws or legal principles. *Ohio Valley Contractors v. Board of Education of Wetzel County*, W.Va., 293 S.E.2d 437 (1982); Syllabus Point 13, *Long v. City of Weirton*, 158 W.Va. 741, 214 S.E.2d 832 (1975).

■ We maintain *Hughes'* rule, with which a majority of courts that have decided the question have agreed, that providing bus transportation for parochial school children does not violate our First Amendment establishment clause or W.Va.Const. art. III, § 15.* Those other courts generally focus upon the child benefits and diminish whatever religiosity there may be, in transporting children to parochial schools. *Everson v. Board of Education*, 330 U.S. 1, 67 S.Ct. 504, 91 L.Ed. 711 (1947); *Bowker v. Baker*, 73 Cal.App.2d 653, 167 P.2d 256 (1946); *Snyder v. Town of Newtown*, 147 Conn. 374, 161 A.2d 770 (1960); *Board of Education v. Bakalis*, 54 Ill.2d 448, 299 N.E.2d 737 (1973); *Nichols v. Henry*, 301 Ky. 434, 191 S.W.2d 930 (1945); *Board of Education of Baltimore County v. Wheat*, 174 Md. 314, 199 A. 628 (1938); *Bloom v.*

---

* U.S. Const.amend. I:

"Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances."

W.Va. Const. art. III, § 15:

"No man shall be compelled to frequent or support any religious worship, place or ministry whatsoever; nor shall any man be enforced, restrained, molested or burthened, in his body or goods, or otherwise suffer, on account of his religious opinions or belief, but all men shall be free to profess, and by argument, to maintain their opinions in matters of religion; and the same shall, in no wise, affect, diminish or enlarge their civil capacities; and the legislature shall not prescribe any religious test whatever, or confer any peculiar privileges or advantages on any sect or denomination, or pass any law requiring or authorizing any religious society, or the people of any district within this State, to levy on themselves, or others, any tax for the erection or repair of any house for public worship, or for the support of any church or ministry, but it shall be left free for every person to select his religious instructor, and to make for his support, such private contract as he shall please."

*School Committee,* 376 Mass. 35, 379 N.E.2d 578 (1978); *Alexander v. Bartlett,* 14 Mich.App. 177, 165 N.W.2d 445 (1968); *Americans United, Inc., As Protestants v. Independent School District, No. 622,* 288 Minn. 196, 179 N.W.2d 146 (1970); *West Morris Regional Board of Education v. Sills,* 58 N.J. 464, 279 A.2d 609 (1971), *cert. denied,* 404 U.S. 986, 92 S.Ct. 450, 30 L.Ed.2d 370; *Board of Education of Central School District No. 1 v. Allen,* 20 N.Y.2d 109, 281 N.Y.S.2d 799, 228 N.E.2d 791 (1967), *affirmed,* 392 U.S. 236, 88 S.Ct. 1923, 20 L.Ed.2d 1060 (1968); *Honohan v. Holt,* 17 Ohio Misc. 57, 244 N.E.2d 537 (1968); *Springfield School District v. Department of Education,* 483 Pa. 539, 397 A.2d 1154 (1979); *Members of Jamestown School Committee v. Schmidt,* R.I., 405 A.2d 16 (1979). *Contra, Matthews v. Quinton,* Alaska, 362 P.2d 932 (1961); *Opinion of the Justices,* 9 Storey 196, 59 Del. 196, 216 A.2d 668 (1966); *Spears v. Honda,* 51 Haw. 1, 449 P.2d 130 (1968); *Epeldi v. Engelking,* 94 Idaho 390, 488 P.2d 860 (1971), *cert. denied,* 406 U.S. 957, 92 S.Ct. 2058, 32 L.Ed.2d 343 (1972); *Board of Education v. Antone,* Okl., 384 P.2d 911 (1963); *Visser v. Nooksack Valley School District, No. 506,* 33 Wash.2d 699, 207 P.2d 198 (1949); *State ex rel. Reynolds v. Nusbaum,* 17 Wis.2d 148, 115 N.W.2d 761 (1962).

■ But *Hughes* was wrongly decided on its Fourteenth Amendment equal protection issue. The equal protection clause is not violated by failure by a state to aid and support parochial or private schools. The United States Supreme Court explained in *Norwood v. Harrison,* 413 U.S. 455, 462, 93 S.Ct. 2804, 2809, 37 L.Ed.2d 723, 729 (1973):

> In *Pierce [v. Society of Sisters,* 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925) ], the Court affirmed the right of private schools to exist and to operate; it said nothing of any supposed right of private or parochial schools to share with public schools in state largesse, on an equal basis or otherwise. It has never been held that if private schools are not given some share of public funds allocated for education that such schools are isolated into a classification violative of the Equal Protection Clause. It is one thing to say that a State may not prohibit the maintenance of private schools and quite another to say that such schools must, as a matter of equal protection, receive state aid.

> ... Even as to church-sponsored schools whose policies are nondiscriminatory, any absolute right to equal aid was negated, at least by implication, in *Lemon v. Kurtzman,* 403 U.S. 602 [91 S.Ct. 2105, 29 L.Ed.2d 745] (1971). The Religion Clauses of the First Amendment strictly confine state aid to sectarian education.

Later in that opinion the court recognized that the Federal Constitution values the free exercise of religion and that therefore a state *may* provide "neutral" services to sectarian schools:

> This does not mean, as we have already suggested, that a State is constitutionally obligated to provide even "neutral" services to sectarian schools. But the transcendent value of free religious exercise in our constitutional scheme leaves room for "play in the joints" to the extent of cautiously delineated secular governmental assistance to religious schools, despite the fact that such assistance touches on the conflicting values of the Establishment Clause by indirectly benefiting the religious schools and their sponsors. *Norwood v. Harrison, supra* 413 U.S., at 469, 93 S.Ct., at 2813.

*Hughes* antedated this and other Supreme Court and federal cases which have indicated that the Fourteenth Amendment *permits,* but does not *require,* expenditure of government funds on parochial students. *Meek v. Pittenger,* 421 U.S. 349, 364, 95 S.Ct. 1753, 1763, 44 L.Ed.2d 217, 231 (1975), *reh. denied,* 422 U.S. 1049, 95 S.Ct. 2668, 45 L.Ed.2d 702; *Luetkemeyer v. Kaufmann,* 364 F.Supp. 376 (W.D.Mo.1973), *affirmed,* 419 U.S. 888, 95 S.Ct. 167, 42 L.Ed.2d 134 (1974); *Brusca v. Missouri ex rel. State Board of Education,* 332 F.Supp. 275 (E.D.Mo.1971), *affirmed,* 405 U.S. 1050, 92 S.Ct. 1493, 31 L.Ed.2d 786 (1972). We find that *Hughes'* equal protection argument is an improper constitutional

analysis and cannot be continued in our law. *Accord, Griffin v. State Board of Education,* 296 F.Supp. 1178, 1182 (E.D. Va.1969).

The legislature wrote about school bus transportation in Code, 18–5–13(6)(a) when it described local school board authority:

(a) To provide at public expense adequate means of transportation, including transportation across county lines, *for all children of school age* who live more than two miles distance from school by the nearest available road .... (Emphasis added.)

The *Hughes* court recognized that this statute allows *"all children of school age"* to be transported, even across county lines, to school; and of course by reference to "school age", acknowledged the mandatory attendance requirements that put school-age children in school regardless of religious beliefs. *See State v. Riddle,* 168 W.Va. 429, 285 S.E.2d 359 (1981). It cannot be doubted that the legislature contemplated *all* children, regardless of their religious beliefs or regardless of the schools attended.

County boards of education are authorized to provide these children with *"adequate* means of transportation," Code, 18–5–13(6)(a) (emphasis added), and thusly, the legislature has chosen to allow adequate transportation for all children, including parochial students, and in doing so has not violated First Amendment establishment clause prohibitions.

Must nonpublic students be bussed?

■ Equal protection requires that similarly situated classes be treated alike. Syllabus Point 2, *Donaldson v. Gainer,* 170 W.Va. 300, 294 S.E.2d 103 (1982); Syllabus Point 3, *Shackleford v. Catlett,* 161 W.Va. 568, 244 S.E.2d 327 (1978). When there is a rational basis to distinguish between groups of individuals, not based on invidious discrimination, then different treatment does not offend equal protection provisions.

Public and parochial school children may rationally be treated differently because they are not similarly situated. All children under sixteen years old are required to attend approved schools; but a parochial

school student has chosen to reject a free public school education in favor of a privately paid education emphasizing religious beliefs and principles.

■ The United States Supreme Court has accepted transportation stipends for parochial students in New Jersey, *Everson v. Board of Education,* 330 U.S. 1, 67 S.Ct. 504, 91 L.Ed. 711 (1947), and other states have used that approach. Ohio Rev. Ann. § 3327.01; Iowa Code Ann. 285.2; Mich. Comp.Laws Ann. § 380.1321 and 1322; N.M.Stat.Ann. § 22–16–7.

Many states have specific statutes mentioning transportation of non-public school students: Alaska Stat. § 14.09.020 (regular bus routes); Cal. [Educ.] Code § 39808 (West) (regular routes, no stipends); Conn. Gen.Stat.Ann. § 10–281 (West) (regular services not to exceed twice last year's public student transportation cost); Del. Code Ann., (tit. 14) § 2905 (same as public school transportation); Ill.Ann.Stat. ch. 122 § 29–4 (Smith-Hurd) (regular routes or separate routes); Ind.Code Ann. § 20–9.1–7–1 (Burns) (regular routes); Iowa Code Ann. § 285.2 (West) (reimbursement); Kan.Stat. Ann. § 72–8306 (regular routes); Louisiana Rev.Stat.Ann. § 17:158 (West) (any student attending approved school within district); Mass.Gen.Laws Ann., ch. 76, § 1 (West) (same as public students); Mich.Comp. Laws Ann. § 380.1321 and 1322 (West) (regular routes; stipends); Mont.Code Ann. § 20–10–123 (nonpublic student must pay, get permit and can be denied if seating unavailable); Neb.Rev.Stat. § 79–487 (regular routes and times within district); N.H. Rev.Stat.Ann. § 189:9 (same as public students); N.J.Stat.Ann. § 18A:39–1 (West) (nonpublic students allowed statutory maximum amount for school bus transportation costs or stipend to parents); N.M.Stat.Ann. § 22–16–7 (regular routes; stipends allowed); N.Y.Educ.Law § 3635 (McKinney) (nonpublic school children transported from pick-up points at public schools); N.D.Cent. Code § 15–34.2–16 (established times and routes when space available); Ohio Rev. Ann. § 3327.01 (Page) (stipend allowed); Or.Rev.Stat. § 332.415 (same as public students); Pa.Stat.Ann., tit. 24, § 13–1361

[redacted] 

(Purdon) (nonprofit within district); R.I. Gen. Laws § 16–21–1 (nonprofit); Wash. Rev.Code Ann. § 28A.24.065 (same routes if seats available; private students must pay); Wisc.Stat.Ann. § 121.54(2)(b) (West) (regular routes within district or five miles beyond school district).

*But see,* Idaho Code § 33–1501 (ruled unconstitutional as applied to private school students, *Epeldi v. Engelking,* 94 Idaho 390, 488 P.2d 860 (1971), *cert. denied,* 406 U.S. 957, 92 S.Ct. 2058, 32 L.Ed.2d 343 (1972)); Mo.Ann.Stat. § 167.231 (Vernon) (constitutional even though it applies only to public school students, *Luetkemeyer v. Kaufmann,* 364 F.Supp. 376 (W.D.Mo.1973), *affirmed,* 419 U.S. 888, 95 S.Ct. 167, 42 L.Ed.2d 134 (1974)).

We find that a full monetary stipend and permission to ride school buses on regularly scheduled bus routes is "adequate means" for public or nonpublic school students.

Both sides have stipulated that the present stipend is inadequate. It must be increased to an amount needed to provide adequate transportation.

The writ of mandamus is granted as moulded. The Kanawha County Board of Education must make the transportation adequate, by adequate funding or establishment of bus routes necessary to provide adequate transportation for parochial children.

Writ granted as moulded.