478 S.E.2d 341

STATE of West Virginia ex rel. Mike COOPER, as a Citizen and Taxpayer of Summers County and as a Parent of Children of School Age, Suing in his own Behalf and in Behalf of all Other Citizens of Summers County Who Are In Like Circumstances or Similarly Situated, Petitioner,

v.

The BOARD OF EDUCATION OF SUMMERS COUNTY, a Statutory Corporation, and Charles Rodes, Superintendent of Schools for Summers County, Respondents.

No. 23527.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 10, 1996.

Decided Oct. 11, 1996.

G. Nicholas Casey, Jr., Shawn Anthony Taylor, Lewis, Friedberg, Glasser, Casey & Rollins, Charleston, for Petitioner.

Kathryn Reed Bayless, Bayless, McFadden & Cyrus, for Respondents.

PER CURIAM:

The petitioner, Mike Cooper, as a citizen and taxpayer of Summers County and as a parent of children of school age, suing in his own behalf and in behalf of all other citizens of Summers County who are in like circumstances or similarly situated, has invoked the original jurisdiction of this Court in seeking a writ of mandamus to compel the respondents, the Board of Education of Summers County, a statutory corporation, and Charles Rodes, Superintendent of Schools for Summers County, to provide school bus transportation, or a stipend in lieu thereof, for his children to attend a private religious school in nearby Monroe County. The petitioner contends the respondents have a duty to provide this service and that failure therein constitutes a denial of equal protection and infringes upon the right of religious freedom. For the reasons set forth herein, we deny the writ.

The relevant facts in this case are not disputed by the parties. Beginning in the school year 1989–90, the respondents acted upon a request from parents of children in Summers County to transport resident students to the Ballard Christian School in nearby Monroe County. The respondents continued to carry out this transportation service for the next six consecutive school years. The respondents, during this period, did not provide an equivalent transportation service for Summers County students who may have desired to attend a public school outside the county. The respondents did, however, provide transportation services for Raleigh County resident students to attend public schools in Summers County.

As a result of operating with a significant long-term deficit, beginning in the school year 1990–91 to the present,[1] the respondents determined during the 1995–96 school year that they would have to make drastic cuts in the services they provided. This decision was reached after the voters of Summers County refused to pass a special levy in January 1996. The respondents reacted to the deficit problem by taking the following measures, which would take effect during the 1996–97 school year: (1) eliminate five teaching positions[2]; (2) reduce the length of employment terms for forty-five employees[3]; (3) terminate supplemental pay contracts for speech, band, and athletic programs[4]; and (4) eliminate service personnel positions.[5] The elimination of service personnel positions included the termination of two bus drivers

---

1. The deficits incurred are as follows: (1990–91) $250,343; (1991–92) $258,974; (1992–93) $393,620; (1993–94) $117,369; (1994–95) $306,226; and (1995–96) $360,620. The respondents project a deficit for the 1996–97 school year.

2. The projected savings from this cut is $90,000.

3. The projected savings from this cut is $55,000.

4. The projected savings from this cut is $55,000.

5. The projected savings from this cut is $170,000.

and the transportation of Summers County students to the Ballard Christian School.[6]

The respondents assert that part of the pressure forcing them to make deficit reduction cuts in services, stemmed from the prohibition in W. Va.Code, 11–8–26 (unlawful expenditures), which forbids "incur[ring] a casual deficit which exceeds [their] approved levy estimate by more than three percent[.]"[7] The respondents have indicated they are "perilously close to the casual deficit limit." The respondents also assert they have "not had a special levy in effect since the 1981–82 school year."

Approximately thirty-two students living in Summers County are affected by the decision to terminate transportation services to Ballard Christian School, beginning in the school year 1996–97. The petitioner has two school-aged children [8] who live with the petitioner and his wife in Summers County. Both children attend Ballard Christian School. The petitioner's children have been using transportation provided by the respondents to attend school. When the petitioner learned of the planned discontinuance of the "Ballard Christian run," he objected and requested the transportation continue or, alternatively, the respondents provide him with a stipend for arranging transportation for his children to attend school in Monroe County. The respondents rejected both requests. The petitioner then filed this original mandamus proceeding seeking to compel the respondents to either continue the "Ballard Christian run" or provide him with a stipend for arranging to have his two children transported to Ballard Christian School.

■ We begin our analysis by noting that in Syllabus Point 2 of *Hickman v. Epstein*, 192 W.Va. 42, 450 S.E.2d 406 (1994), it was indicated:

"The function of a writ of mandamus is to enforce the performance of official duties arising from the discharge of some public function, or imposed by statute."

However, a writ of mandamus will not issue unless three elements coexist: (1) the existence of a clear right in the petitioner to the relief sought; (2) the existence of a legal duty on the part of the respondent to do the thing which the petitioner seeks to compel; and (3) the absence of another adequate remedy. Syl Pt. 1, *State ex rel. Billings v. Point Pleasant*, 194 W.Va. 301, 460 S.E.2d 436 (1995). *See also* Syl. Pt. 2, *State ex rel. Kucera v. City of Wheeling*, 153 W.Va. 538, 170 S.E.2d 367 (1969). It was observed in *McComas v. Board of Education of Fayette County*, 197 W.Va. 188, 193, 475 S.E.2d 280, 285 (1996), that "courts may not interfere with the decisions of a school board without strong evidence justifying such interference. A school board's powers are not unlimited, however; and a writ of mandamus is appropriate when a board oversteps, or fails to meet, its clear legal duties." 197 W.Va. at 193, 475 S.E.2d at 285, *citing Board of Educ. of Kanawha County v. West Va. Bd. of Educ.*, 184 W.Va. 1, 3, 399 S.E.2d 31, 33 (1990). This Court stated succinctly in Syllabus Point 4 of *Dillon v. Board of Education of Wyoming County*, 177 W.Va. 145, 351 S.E.2d 58 (1986):

"Mandamus will lie to control a board of education in the exercise of its discretion upon a showing of caprice, passion, partiality, fraud, arbitrary conduct, some ulterior motive, or misapprehension of the law."

*See* Syl. Pt. 1, *McComas, supra;* Syl. Pt. 4, *State ex rel. West Va. Bd. of Educ. v. Perry*, 189 W.Va. 662, 434 S.E.2d 22 (1993); Syl. Pt. 1, *Pell v. Board of Educ. of Monroe County*, 188 W.Va. 718, 426 S.E.2d 510 (1992).

■ The petitioner concedes in his brief that the respondents have discretionary au-

---

**6.** The respondents did not discontinue transporting Raleigh County resident students to Summers County schools. This service was continued because "the enrollment of those students positively affects the funding formula and creates an increase in the amount of money provided to the county by the state for the operation of the school system."

**7.** The respondents assert the following statutes are applicable to them if they exceed the 3 percent limit: (1) W.VA.Code, 11–8–31 (removal from office, civil liability, and criminal liability); and (2) W.VA.Code, 11–8–28, –29 and –30 (civil liability).

**8.** The children are Nellie, age 14, and Bethany, age 8.

thority to provide bus transportation.[9] That is, providing school bus transportation is not a mandatory duty imposed upon the respondents by law.[10] The petitioner argues that because the respondents exercised discretion and undertook the task of transporting Summers County students to Ballard Christian School for six consecutive years, the respondents cannot stop providing this service or, if the service legally may be halted, the respondents are obligated to pay to him the cost for transporting his children to Ballard Christian School. The petitioner further alleges that failure to perform either alternative denies him equal protection and infringes upon his right to religious freedom. The respondents assert that terminating the Ballard Christian run and refusing to provide petitioner with a transportation stipend do not violate equal protection principles or the right of religious freedom.

Both of petitioner's constitutional claims are controlled by our decision in *Janasiewicz v. Board of Education of Kanawha County*, 171 W.Va. 423, 299 S.E.2d 34 (1982).[11] In that case, parents of children attending parochial schools in Kanawha County petitioned this Court for a writ of mandamus to compel the county school board to create bus routes for their children or provide them with adequate stipends to pay for their transportation to private schools within the county. The parents argued that failure to provide either alternative violated their right to equal protection and their right to religious freedom. The parents relied upon our earlier decision in *Hughes, see* note 11, *supra,* as support for their constitutional claims. Justice Harshbarger, writing for a unanimous Court, stated the following in *Janasiewicz:*

> "But *Hughes* was wrongly decided on its Fourteenth Amendment equal protection issue. The equal protection clause is not violated by failure by a state to aid and support parochial or private schools. The United States Supreme Court explained in *Norwood v. Harrison*, 413 U.S. 455, 462, 93 S.Ct. 2804, 2809, 37 L.Ed.2d 723, 729 (1973):
>
> " 'In *Pierce [v. Society of Sisters*, 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925) ], the Court affirmed the right of private schools to exist and to operate;

---

**9.** During oral arguments, the petitioner took a different posture and argued, alternatively, that the respondents have a nondiscriminatory duty to provide bus transportation. Our traditional rule of statutory construction is found in Syllabus Point 2 of *Keen v. Maxey*, 193 W.Va. 423, 456 S.E.2d 550 (1995):

> " ' "[']When a statute is clear and unambiguous and the legislative intent is plain the statute should not be interpreted by the courts, and in such a case it is the duty of the courts not to construe but to apply the statute.['] Point 1, syllabus, *State ex rel. Fox v. Board of Trustees of the Policemen's Pension or Relief Fund of the City of Bluefield, et al.*, 148 W.Va. 369 [135 S.E.2d 262 (1964) ]." Syllabus Point 1, *State ex rel. Board of Trustees v. City of Bluefield*, 153 W.Va. 210, 168 S.E.2d 525 (1969).' Syl. pt. 3, *Central West Virginia Refuse, Inc. v. Public Service Com'n of West Virginia*, 190 W.Va. 416, 438 S.E.2d 596 (1993)."

Our examination of the language of the applicable statute in this case, W.Va.Code, 18–5–13(6)(a) (1996), *see* note 10, *infra,* instructs us that it is without ambiguity and that the legislature has not, as argued by the petitioner, mandated that county boards of education provide school bus transportation services.

> " 'Where the language of a statute is plain and unambiguous, there is no basis for application of rules of statutory construction; but courts must apply the statute according to the

legislative intent plainly expressed therein.' Syllabus, *Dunlap v. State Compensation Director*, 149 W.Va. 266 (140 S.E.2d 448) [1965]." Syl. Pt. 1, *Kucera v. City of Wheeling*, 153 W.Va. 531, 170 S.E.2d 217, (1969).

*See Adkins v. City of Huntington*, 191 W.Va. 317, 320, 445 S.E.2d 500, 503 (1994).

**10.** The controlling statute on this issue is W. Va.Code, 18–5–13(6)(a), which provides in pertinent part:

> "The boards, subject to the provisions of this chapter and the rules of the state board, has [*sic* ] authority:
>
> *       *       *       *       *       *
>
> "(6)(a) To provide at public expense adequate means of transportation, including transportation across county lines, for all children of school age who live more than two miles distance from school by the nearest available road[.]"

**11.** In *State ex rel. Hughes v. Board of Education of Kanawha County*, 154 W.Va. 107, 174 S.E.2d 711 (1970), *overruled in part by Janasiewicz, supra,* we held that providing bus transportation by county boards of education for students attending religious schools did not violate the First Amendment to the United States Constitution or Section 15 of Article III of the West Virginia Constitution.

it said nothing of any supposed right of private or parochial schools to share with public schools in state largesse, on an equal basis or otherwise. It has never been held that if private schools are not given some share of public funds allocated for education that such schools are isolated into a classification violative of the Equal Protection Clause. It is one thing to say that a State may not prohibit the maintenance of private schools and quite another to say that such schools must, as a matter of equal protection, receive state aid.

" '... Even as to church-sponsored schools whose policies are nondiscriminatory, any absolute right to equal aid was negated, at least by implication, in *Lemon v. Kurtzman,* 403 U.S. 602 [91 S.Ct. 2105, 29 L.Ed.2d 745] (1971). The Religion Clauses of the First Amendment strictly confine state aid to sectarian education.'

"Later in that opinion the court recognized that the Federal Constitution values the free exercise of religion and that therefore a state *may* provide 'neutral' services to sectarian schools:

" 'This does not mean, as we have already suggested, that a State is constitutionally obligated to provide even 'neutral' services to sectarian schools. But the transcendent value of free religious exercise in our constitutional scheme leaves room for 'play in the joints' to the extent of cautiously delineated secular governmental assistance to religious schools, despite the fact that such assistance touches on the conflicting values of the Establishment Clause by indirectly benefiting the religious schools and their sponsors. *Norwood v. Harrison, supra* 413 U.S., at 469, 93 S.Ct., at 2813 [37 L.Ed.2d, at 733–34].' " *Janasiewicz,* 171 W.Va. at 425, 299 S.E.2d at 36–37. (Interest in original).

■ Our decision in *Janasiewicz* makes crystal clear that county school boards are not constitutionally required to provide transportation services for parochial school children, but that county school boards *may* provide such services.[12] It was reasoned in *Janasiewicz* that: "Public and parochial school children may rationally be treated differently because they are not similarly situated.... [A] parochial school student has chosen to reject a free public education in favor of a privately paid education[.]" 171 W.Va. at 426, 299 S.E.2d at 37–38. Therefore, this Court held in Syllabus Point 2 of *Janasiewicz:*

"The Equal Protection Clause of the Fourteenth Amendment is not violated by treating public and nonpublic school children differently in allocations of state aid and educationally-related resources. We overrule Syllabus Point 2 of [*Hughes* ]."

In spite of our holding in *Janasiewicz,* we granted a writ of mandamus that required county school board officials to provide either an adequate transportation stipend to parents whose children attended parochial schools in the county or create bus routes for those children. The opinion does not explicitly state why the relief was granted. However, a careful reading of the opinion informs this Court that county school board officials were already providing transportation stipends and bus services along public school routes to parents with children in parochial schools. Therefore, this Court merely required the county school board to "adequately" perform a service it had undertaken, but was not constitutionally or statutorily required to do.

■ In the instant proceeding, the respondent had undertaken the task of providing school bus transportation services for petitioner's children and other Summers County children to attend a parochial school in Monroe County. The respondents have now terminated that service. The petitioner contends that our disposition of *Janasiewicz* controls this case in that the respondents must either continue the bus transportation to Monroe County or provide him with a

---

**12.** In Syllabus Point 1 of *Janasiewicz, supra,* we held: "W.Va.Code, 18–5–13(6)(a) *allows* a county school board to provide all school-age children with adequate means of transportation. Full monetary stipends to pay for such transportation, and permission to ride school buses on regularly scheduled bus routes, comply with this statute." (Emphasis added).

transportation stipend. The petitioner wishes to extend *Janasiewicz* further than we intended it to journey. *Janasiewicz* does not obligate a county school board to provide school bus transportation or stipends for parochial school students. *Janasiewicz* merely holds that if such a service is provided, it must be done adequately. We, therefore, decline the invitation to extend *Janasiewicz* beyond its narrow holding.

The petitioner's claim, therefore, actually rests on whether the respondents may arbitrarily or capriciously terminate a service they provided at their discretion. In Syllabus Point 1 of *State ex rel. Payne v. Board of Education of Jefferson County,* 135 W.Va. 349, 63 S.E.2d 579 (1951), we stated:

"Mandamus does not lie to control a board of education in the exercise of its discretion, in the absence of caprice, passion, partiality, fraud, arbitrary conduct, some ulterior motive, or misapprehension of law upon the part of such board."

*See,* Syl. Pt. 5, *State ex rel. Withers v. Board of Educ. of Mason County,* 153 W.Va. 867, 172 S.E.2d 796 (1970). In Syllabus Point 2 of *Beverlin v. Board of Education of Lewis County,* 158 W.Va. 1067, 216 S.E.2d 554 (1975), we stated:

"Arbitrary or capricious use of [discretionary authority] will not survive judicial scrutiny."

This Court confronted the question of terminating discretionary conduct by a county school board in *Pell v. Board of Education of Monroe County,* 188 W.Va. 718, 426 S.E.2d 510 (1992). In that case, a Comprehensive Educational Facilities Plan (CEFP) was completed by the Monroe County Board of Education and filed with the State Board of Education. Under that plan, construction would begin on a new high school at Coulters Chapel for grades 9 through 12; Peterstown and Union High Schools would be closed; the elementary and junior high schools at Greenville would be closed; ninth-grade students would be transferred to the new high school; and middle and elementary students would be placed at Gap Mills, Union, or Peterstown.

The CEFP plan was approved by the State Board of Education and eventually the Monroe County Board of Education was awarded close to eight million dollars to carry out the plan, which was projected to actually exceed a cost of eight million dollars. At the point the CEFP plan was put into operation, the county school board decided to abort the plan.[13] Almost two hundred thousand dollars in expenses had been incurred when the decision to abort was made. Additionally, halting of the CEFP plan was said to jeopardize the funding granted for consolidation and closing of schools in the county. Concerned citizens of Monroe County brought a mandamus proceeding in circuit court to compel the county school board to continue with a plan that was discretionary in its conception and implementation. The circuit court in that case granted the writ, after finding the county school board acted arbitrarily and capriciously in making the decision to cease discretionary conduct it had begun. On appeal to this Court, the county school board asked that we reverse the decision of the circuit court.

The central issue for this Court in looking at the termination of discretionary authority in *Pell,* was fathoming the reasons proffered by the county school board for its decision to terminate the CEFP plan. This reasoning we found wholly lacking. In affirming the circuit court's decision, we stated:

"If a comprehensive educational facilities plan has been developed by a county board of education, approved by the state board of education, submitted to a regional educational services agency, granted approval for funding on a priority basis by the state school building authority, satisfied all requirements for approval ... and contracts have been entered into to begin implementation of such plan, then *it is arbitrary and capricious for a county board of education, with no articulated reasons, to take action that would cause the plan to not be implemented* or to replace such plan with an alternative plan, where such action would place in jeopardy the possibility of

---

**13.** The authority to consolidate and close schools is a discretionary power granted under W. Va. Code, 18–5–13(3) and (4).

obtaining the approved funding." 188 W.Va. at 724, 426 S.E.2d at 516. (Emphasis added).

In the instant matter, the respondents contend that their decision to stop the Ballard Christian run was not arbitrarily or capriciously done. The respondents cite what appears to be extreme financial difficulties as the exclusive reason for terminating services to the Ballard Christian School. The record indicates that as a result of past deficits and projected deficits, the respondents were forced to (1) eliminate five teaching positions; (2) reduce the length of employment terms for forty-five employees; (3) terminate supplemental pay contracts for speech, band, and athletic programs; and (4) eliminate service personnel positions. As part of their deficit reduction measures, the respondent terminated the Ballard Christian run. "It does not appear that in the exercise of its discretion in [terminating the Ballard Christian run] the [county] board of education, acted capriciously, arbitrarily, or in any improper manner which justifies control of its action by mandamus." *Payne,* 135 W.Va. at 358, 63 S.E.2d at 585. "We find no evidence of any misconduct on the part of the [county school] [b]oard which would warrant such a finding." *Cox v. Board of Educ. of the County of Hampshire,* 177 W.Va. 576, 581, 355 S.E.2d 365, 370 (1987). The petitioner concedes that necessary deficit reduction measures caused the termination of the Ballard Christian run. In spite of such concession, the petitioner spins reason on its head and persists in arguing that the termination of transportation services was an arbitrary or capricious act. Other than hurling unpersuasive hollow-point platitudes, the petitioner did not offer any evidence that mildly demonstrates where or how the respondents have acted arbitrarily or capriciously in terminating the Ballard Christian run. We fathom no such evidence. The petitioner fails to articulate any evidence. Therefore, the writ is denied.

Writ denied.